### SAMUEL C. BURNEY *vs.* CHILDREN'S HOSPITAL.

Suffolk.    March 5, 1897. — June 16, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Action by Father against Hospital for performing Autopsy on Dead Body of Child.*

The father of a child, who is its natural guardian, has a right, in case the child dies, to the possession of its body for burial, and may maintain an action for an unauthorized autopsy performed on the dead body of the child.

TORT, against a hospital for causing an autopsy to be made upon the dead body of the plaintiff's child without the plaintiff's consent.  The defendant demurred to the declaration, assigning as ground therefor that the matters contained therein " are not sufficient in law for the plaintiff to have his action against this defendant."  The Superior Court sustained the demurrer; and the plaintiff appealed.

*R. W. Gloag,* for the plaintiff.

*H. Wheeler,* for the defendant.

LATHROP, J.    The demurrer in this case is a general one, and the question presented is whether the father of a child, who is its natural guardian, and who has intrusted the child to a hospital for treatment, may maintain an action against the hospital for an autopsy performed on the dead body of his child without his consent.

The sole contention of the learned counsel for the defendant in support of the demurrer is, that the action cannot be main-

tained, because there is no right of property in a dead body. 2 Bl. Com. 429.   3 Inst. 202.

Even in England, before a dead body is buried, while there is no right of property in it, there is a right of possession for the purposes of burial, or other lawful disposition of it.   Thus in *The Queen* v. *Fox*, 2 Q. B. 246, where a prisoner in jail on execution died, and the jailer refused to deliver the body to the executors of the deceased unless they would satisfy certain claims made against him, the Court of Queen's Bench issued a mandamus peremptory in the first instance, commanding that the body should be delivered up to the executors.   So in *Williams* v. *Williams*, 20 Ch. D. 659, while it was held that there is no property in a dead body, it was also held that the executors had a right to the possession of the body, and that it was their duty to bury it.

In this Commonwealth, the precise question before us has not been passed upon.   It is, however, apparent from the decisions that a right of possession is recognized, which is vested in the husband or wife, or next of kin, and not in the executors.

In *Lakin* v. *Ames*, 10 Cush. 198, the defendants were sued in trespass for tearing down a horse shed.   The defence was that the shed was on the public common of the town, and was erected in front of a tomb lawfully on the burying ground adjoining the common, so as to obstruct the entrance thereto, and that the first named defendant, having the legal right to open the tomb, and deposit the body of his deceased brother therein, peaceably removed the shed, doing no unnecessary damage.   Liberty given by the town to a man to build a tomb was held to be a grant to the man and his heirs.   The first named defendant had no legal interest in the tomb, nor had he express authority from his mother, one of the heirs of the former owner.   But it was said by the court, " The law will imply a license from the nature and exigencies of the case, the relation of the parties, and the well established usages of a civilized and Christian community."

In *Durell* v. *Hayward*, 9 Gray, 248, it was held that a husband, who had buried his wife in a public burying ground, was not liable as a trespasser for removing a gravestone, since placed at her grave by her mother, without injuring the stone, and for the purpose of substituting another.   It was said by Mr. Justice

Bigelow: "The plaintiff had no right to erect a stone at the grave of the defendant's wife without his knowledge or consent. The indisputable and paramount right, as well as duty, of a husband, to dispose of the body of his deceased wife by a decent sepulture in a suitable place, carries with it the right of placing over the spot of burial a proper monument or memorial in accordance with the well known and long established usage of the community."

In *Meagher* v. *Driscoll*, 99 Mass. 281, it was held that, if the plaintiff owns the lot in which the body of his child is buried, he may maintain an action of tort in the nature of trespass *quare clausum fregit*, for the unlawful removal of the body; and, in measuring damages, the jury may take into consideration the injury to the plaintiff's feelings, if it appears that the defendant acted in wilful disregard or careless ignorance of the plaintiff's rights.

In *Weld* v. *Walker*, 130 Mass. 422, the right of a husband to bury his wife was again recognized, and it was held that, if he had not freely consented to the burial of her body in a lot of land owned by another person, with the intention or understanding that it should be her final resting place, a court of equity would permit him, after such burial, to remove her body, coffin, and tombstones to his own land.

In *Driscoll* v. *Nichols*, 5 Gray, 488, cited by the defendant, the plaintiff was a stranger in blood to the deceased. The action was in contract or tort for not carrying the dead body. The case was decided on the ground that the plaintiff had no legal interest in the dead body, by reason of which he could maintain the action against the carrier without proof of a special contract with himself. That case differs widely from the one at bar.

In Rhode Island, it is held that there is a quasi right of property in a dead body which the law will protect. Thus, in *Pierce* v. *Swan Point Cemetery*, 10 R. I. 227, 237, it is said by Mr. Justice Potter: "That there is no right of property in a dead body, using the word in its ordinary sense, may well be admitted. Yet the burial of the dead is a subject which interests the feelings of mankind to a much greater degree than many matters of actual property. There is a duty imposed by the universal feelings of mankind to be discharged by some one towards the dead; a

duty, and we may also say a right, to protect from violation; and a duty on the part of others to abstain from violation; it may therefore be considered as a sort of quasi property, and it would be discreditable to any system of law not to provide a remedy in such a case."

So in *Hackett* v. *Hackett*, 18 R. I. 155, it was held that there was a quasi right of property in a dead body, and that, as a general rule, a widow had the primary right to control the burial of her husband, dependent however upon the peculiar circumstances of the case, or the waiver of such right by consent or otherwise.

In the case at bar there was no executor, and there could be none, as the deceased was a minor. The father, as the natural guardian of the child, was entitled to the possession of its body for burial.

Being entitled to the possession of the body for the purposes of burial, is not his right against one who unlawfully interferes with it, and mutilates it, as great as it would be if the body was buried in his lot, and was thence unlawfully removed? That an action may be maintained in the latter case, we have already seen; and we are of opinion that it may be in the former.

This is so held in a well considered case in Minnesota, where, in an action brought by a widow for the unlawful dissection of the body of her dead husband, an order overruling a demurrer to the complaint was affirmed. *Larson* v. *Chase*, 47 Minn. 307. This was followed in a similar case in New York. *Foley* v. *Phelps*, 1 App. Div. (N. Y.) 551, where the right to possession was defined thus : " The right is to the possession of the corpse in the same condition it was in when death supervened. It is the right to what remains when the breath leaves the body, and not merely to such a hacked, hewed, and mutilated corpse as some stranger, an offender against the criminal law, may choose to turn over to an afflicted relative." See also *Renihan* v. *Wright*, 125 Ind. 536; *Young* v. *College of Physicians and Surgeons*, 81 Md. 358; 19 Am. Law Rev. 251; 10 Alb. L. J. 71; 4 Am. Law Times, 127, and 3 Chicago Leg. News, 378; Perley, Mortuary Law, 26 *et seq.*

The question has not been argued by the defendant whether the nature of the hospital is such that an action against it can-

not be maintained for the alleged illegal acts of its officers and servants, and we express no opinion upon it. Nor do we need to inquire under what circumstances an autopsy is justifiable, as this question also has not been argued. These questions can better be determined when the facts are before us after a trial of the case. All that we need now to decide is whether the objection raised by the defendant is valid or not. As we are of opinion that it is not valid, the order sustaining the demurrer and directing a judgment for the defendant must be

*Set aside.*