## SOUTHERN LIFE & HEALTH INS. CO. et al. v. MORGAN. (6 Div. 637.)

(Court of Appeals of Alabama. March 24, 1925. Rehearing Denied May 12, 1925.)

**1. Dead bodies ⇐9—Nearest relation may maintain action for interference with burial.**

Nearest relation of dead person present may maintain action against wrongdoer for unwarranted interference with burial of body, the action being based upon a tort, irrespective of any contract in relation to the preparation of the burial.

**2. Dead bodies ⇐9—Father held proper party plaintiff, in action for interference with burial of son's body.**

Father, who was nearest relation present for purposes of burying body of dead son, *held* proper party plaintiff, in action for wrongful interference with burial.

**3. Dead bodies ⇐9—Complaint held to state cause of action for interference with burial of son's body.**

Complaint *held* to state cause of action for damages for wrongful interference by defendant with burial of dead body of plaintiff's son.

**4. Dead bodies ⇐9—Father entitled to compensatory damages for trouble and delay and loss of consolation proximately resulting from interference with burial.**

In action for damages for the wrongful interference by defendant with the burial of dead body of plaintiff's son, where the plea was the general issue, plaintiff, on establishing the material allegations to the reasonable satisfaction of the jury, was entitled to compensatory damages for the trouble and delay brought about as a proximate result of the wrong committed, as well as the loss of the consolation of the wife and relatives of plaintiff who were prevented by defendant's conduct from attending the funeral.

**5. Dead bodies ⇐9—Father, suing for interference with burial of son's body, held not entitled to damages for mental anguish.**

Plaintiff, suing for wrongful interference with burial of his dead son, *held* not entitled to damages for mental pain and anguish.

**6. Dead bodies ⇐9—Instructions relating to burial held proper.**

In action for damages for wrongful interference with the burial, by plaintiff, of his dead son, given charges relating to the burial of the dead body *held* proper, under Acts 1919, p. 909, §§ 5, 7, 9, 11.

**7. Dead bodies ⇐9—Intentional withholding and refusal to deliver death certificate, proximately causing damage from delay in burial, held actionable.**

In action against insurance company for damages for wrongful interference with the burial by plaintiff of his dead son, it appearing that, when plaintiff presented to defendant the death certificate in connection with proof of death under life policy, defendant's intentional withholding and refusal to return to plaintiff the death certificate, which proximately caused the damage complained of, *held* the basis for plaintiff's right of action.

**8. Dead bodies ⇐9—Vexation and distress of mind as natural consequences of wrongful withholding of death certificate held compensable.**

In action against insurance company for wrongful interference with burial of plaintiff's son, based on defendant's withholding of death certificate issued, which was necessary to obtain a burial permit, *held* that, in addition to inconvenience and delay arising to plaintiff in being forced through wrongful act of defendant to obtain a second certificate of death from the attending physician, plaintiff was also entitled to compensatory damages for the vexation, wrong, or distress of mind to which he was subjected as the natural, proximate and reasonably to be expected consequences of the wrong complained of.

**9. Dead bodies ⇐1—Father held entitled to custody of body of married son.**

Father *held* entitled to custody of body of married son, where son's wife was not present.

**10. Dead bodies ⇐3—Duty of father having custody of body of married son to give interment.**

It is the duty of a father, who has the lawful custody of the body of his dead son by reason of the absence of his son's wife, to give the body a decent interment.

**11. Dead bodies ⇐1—Charges on right of father to bury body of married son held properly refused.**

Charges on issue of right of father to bury body of deceased married son *held* properly refused.

**12. Dead bodies ⇐9—Diligence in procuring second death certificate held for jury.**

In action for damages for wrongful interference by defendant insurance company with the burial of plaintiff's dead son, it appearing that the burial was delayed because of defendant's wrongful retention of a death certificate, which plaintiff gave to it in connection with proof of death under a life policy, refusal of affirmative instructions on the issue whether plaintiff used reasonable diligence in securing a second certificate of death, so as to minimize the damage on account of defendant's wrong, *held* properly refused; there being evidence pro and con on the issue.

**13. Dead bodies ⇐9—Evidence of place where blank certificates of board of health were kept held relevant, in action for interference with burial.**

In action for damages for defendant insurance company's wrongful interference with burial of body of plaintiff's son, it appearing that defendant wrongfully withheld a certificate which was necessary to obtain a burial permit, evidence as to the place where the blank certificates of the board of health were kept for the convenience of those requiring them *held* relevant, on issue of diligence in procuring second death certificate.

14. Dead bodies ⬳9—That body was not embalmed held relevant to show necessity of avoiding delay in funeral.

In an action for damages for wrongful interference by defendant insurance company with the burial of plaintiff's dead son, by withholding a death certificate, the fact that the body was not embalmed held relevant to show the urgent necessity of avoiding delay in carrying out the funeral arrangements.

15. Dead bodies ⬳9—Time body remained in undertaker's shop before it could be legally buried held relevant.

In action for damages for wrongful interference by defendant insurance company with the burial of plaintiff's dead son, by withholding a death certificate, which was necessary to obtain a burial permit, it appearing plaintiff was compelled to obtain a second death certificate, the length of time the body remained in undertaker's shop before it could have been legally buried held relevant.

16. Dead bodies ⬳9—Evidence to show delay of burial held admissible.

In action for damages for wrongful interference with the burial of plaintiff's dead son, caused by defendant insurance company's wrongful withholding of certificate of death, which was necessary to obtain a burial permit, all of the facts and circumstances, connected with the burial, tending to show delay caused by the defendant in failing to deliver the certificate, held admissible.

17. Witnesses ⬳240(2)—Permitting asking of leading questions is discretionary with trial court.

Permitting the asking of leading questions is discretionary with trial court.

18. Dead bodies ⬳9—Members constituting family held immaterial in action for interference with burial.

In action for damages for wrongful interference with the burial of plaintiff's dead son, caused by defendant insurance company's wrongful withholding of certificate of death, which was necessary to obtain a burial permit, it was immaterial as to who were the members of plaintiff's family at the time of death of plaintiff's son.

19. Dead bodies ⬳9—Circumstances held immaterial on issue of wrongful interference with burial, and objectionable as multiplying issues.

In action for damages against an insurance company for wrongfully interfering with the burial of plaintiff's son, by withholding a death certificate presented to defendant in connection with life policy, question as to when plaintiff obtained the policy from defendant, or the circumstance that suit on that policy was defeated on the ground of fraud, held irrelevant, and objectionable as tending to multiply the issues.

20. Witnesses ⬳236(1)—Exclusion of testimony as to whether witness cursed plaintiff held not error.

Where plaintiff testified that defendant's agent said to him, "I won't give you a G—— d—— thing," and at another time said, "I'll maul h—— out of you," exclusion of witness' answer to question propounded to him, inquiring not whether witness had said those things, but whether he had cursed plaintiff, held not error, in view of the form of question put.

21. Insurance ⬳546 — Party procuring certificate of death and presenting it to insurance company held entitled to its return, before its acceptance as proof of death under policy of insurance.

Party procuring certificate of death and presenting it to insurance company, in connection with proof of death under a policy, held entitled to its return, before its tender and acceptance as proof of death.

On Rehearing.

22. Dead bodies ⬳1—There is no property in dead body.

There is no property in dead body of human being, in commercial sense.

23. Dead bodies ⬳1—Right to possession and disposition of dead body is trust.

Right to possession and disposition of dead body is trust to be exercised for all having affection for deceased and interest in seeing decent interment of body.

24. Dead bodies ⬳1—Surviving spouse's right to possession waived, unless asserted.

Surviving spouse's paramount right to possession of dead body is waived, unless asserted.

25. Dead bodies ⬳1—Where surviving spouse waives right, possession is in next of kin.

Where surviving spouse, such as a wife, waives right to possession of dead body of her husband, either expressly or impliedly, next of kin are entitled to possession of the body for burial purposes.

26. Dead bodies ⬳1 — Right of surviving spouse must be promptly asserted.

In case of a dead body needing burial, the right of the surviving spouse must be promptly asserted, or the right to possession of the body for the purposes of interment will be held to have been waived in favor of the next of kin.

27. Dead bodies ⬳1 — When surviving wife waives right to possession of body stated.

Where the surviving wife is not living with her husband at the time of his death, or neglects or refuses to assume the trust incident to her right to possession of body for burial purposes, waiver of that right is implied, and the right and duty to provide a decent interment immediately descends to the next of kin present and acting.

28. Dead bodies ⬳9—Interference with rights in body actionable.

Any interference with legal custody of a dead body, which the next of kin have, and the legal rights which they have in the body, is an actionable wrong.

29. Dead bodies ⬳1—Right to possession for burial legal right which courts will protect.

Right to possession of a dead body for burial purposes is legal right, coupled with certain duties which courts will protect.

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**30. Dead bodies ☞1—Right of possession in surviving spouse.**

Right of possession to dead body of spouse is in surviving spouse, if both live together at time of demise.

**31. Dead bodies ☞1—Surviving wife's right to custody of husband's body held waived.**

Wife, who was not living with husband at time of his death, waived her rights to custody of his body, where she was not present to claim it.

**32. Dead bodies ☞3—Duty to bury body of married son held to have devolved on father.**

Where the wife did not live with her husband at the time that he died in his father's home, and the wife did not appear, the duty of burying the son *held* to have devolved upon the father.

**33. Appeal and error ☞766—General abstract statements, constituting thrusts at court, have no proper place in brief.**

General abstract statements, lacking logic and authority, and constituting thrusts at court, have no proper place in brief.

**34. Dead bodies ☞9—Insurance company held charged with knowledge of law requiring certificate of death.**

Defendant insurance company *held* charged with the knowledge of the law (Code 1923, § 3870), requiring a death certificate before a burial of a person can take place.

**35. Dead bodies ☞9—Insurance company held charged with knowledge of laws pertaining to form of certificate for obtaining burial permit.**

Defendant insurance company, when it wrongfully withheld from plaintiff a certificate of death, was charged with the knowledge of the health laws embraced in Code 1923, §§ 1071, 1073, together with the rules and regulations promulgated by the state and county boards in conformity with those statutes, embracing the form of death certificate for obtaining of a burial permit for the dead.

**36. Customs and usages ☞12(1)—Insurer's custom to receive certificates of death as proofs of death held not binding on party not knowing custom.**

Insurer's custom to receive from policy holders certificates of death as proofs of death *held* not binding on party not knowing custom.

**37. Customs and usages ☞12(1) — Custom, not general in character, binds only persons having knowledge of its existence.**

Custom, not general in character, binds only persons having knowledge of its existence.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Action for damages for wrongful interference with the burial of a dead body by James Morgan against the Southern Life & Health Insurance Company and L. O. Lowe. Judgment for plaintiff, and defendants appeal. Affirmed.

Certiorari denied by Supreme Court in Ex parte Southern Life & Health Ins. Co. et al., 213 Ala. 413, 105 So. 168.

The following charges were given at plaintiff's request:

"(3) I charge you, gentlemen of the jury, that the certified copy of the certificate of death of James Morgan, Jr., introduced in evidence by the plaintiff in this case, is prima facie evidence of the facts therein stated.

"(4) I charge you, gentlemen of the jury, that under the law the dead body of the plaintiff's son could not be buried, unless a permit for burial had been properly issued by the local registrar of the registration district in which the death occurred, or in which the body was found."

"(6) I charge you, gentlemen of the jury, that under the law a medical certificate of death, made and signed by the physician last in attendance on the plaintiff's dead son, was one of the prerequisites to the obtaining of a permit for burial of such decedent."

These charges were refused to defendant:

"(7) If you find from the evidence in this case that the said deceased was at the time of his death a married man, whose wife was living, then I charge you that your verdict must be for the defendants."

"(32) If you find from the evidence in this case that the defendants did interfere with the burial of the body of said deceased, and further find from the evidence that prior to and at the time of the death of the said James Morgan, Jr., he was a married man and left surviving him his widow, then I charge you that the plaintiff in this case cannot maintain this action, and your verdict should be for the defendant."

"(41) The court charges the jury that the dead body of a married man dying in this state belongs to his wife, and that the next of kin, such as the father of such deceased, cannot recover as for any wrongs done with reference to such dead body.

"(42) If you find from the evidence in this case that the deceased, James Morgan, Jr., was prior to and at the time of his death a married man, you cannot find for the plaintiff."

"(6) There can be no recovery by the plaintiff in this case of any damages in excess of nominal damages, such as one cent or one dollar."

"(16) You cannot award the plaintiff any damages in this case for any trouble on his part growing out of the matters involved in this case.

"(17) You cannot award the plaintiff any damages in this case for any inconvenience suffered by him or any expense incurred by him."

"(33) I charge you, gentlemen of the jury, that you cannot assess any damages for decomposition of the body of plaintiff's son after first 72 hours after plaintiff's son's death.

"(34) I charge you, gentlemen of the jury that, after 72 hours from the time of death of plaintiff's son, he could have been buried legally without the necessity of any permit.

"(35) If you believe the evidence in this case, you cannot award the plaintiff any damages for the failure of his wife, son, daughters, and friends failing to attend the burial of his son.

"(36) If you believe the evidence in this case,

you cannot award the plaintiff any damages for or on account of his failure to attend the burial of his son.

"(37) If you believe the evidence in this case, you cannot award the plaintiff any damages on account of the body of his son becoming decomposed."

"(43) The court charges the jury that, if you find for the plaintiff in this case under count 2 of the complaint as amended, then you cannot award damages in excess of the reasonable market value of the death certificate alleged in said count to have been converted by the defendants."

"(46) The court charges the jury that, in the event you should find from the evidence that the defendants converted the death certificate involved in this case, then you cannot award any damages for such conversion in excess of the reasonable value on the market of said death certificate."

Huey & Welch, of Bessemer, for appellants.

The complaint states no cause of action. Defendants were due the general affirmative charge. Newton v. Brook, 134 Ala. 269, 32 So. 722; Gulf St. Steel Co. v. Fail, 201 Ala. 524, 78 So. 878; 8 R. C. L. 686; 17 C. J. 1139, 1145; 11 C. J. 64; Union Cemetery Co. v. Alexander, 14 Ala. App. 217, 69 So. 251; Birmingham Tr. & Tr. Co. v. Still, 7 Ala. App. 556, 61 So. 611; Deavors v. So. Ex. Co., 200 Ala. 372, 76 So. 288. The court erred in refusing to give, at defendant's request, charges that no more than nominal damages were recoverable. 17 C. J. 1147; Kyles v. Sou. R. Co., 147 N. C. 394, 61 S. E. 278; Jacobus v. Congregation, etc., 107 Ga. 518, 33 S. E. 853, 73 Am. St. Rep. 141; Long v. Chicago R. Co., 15 Okl. 512, 86 P. 289, 6 L. R. A. (N. S.) 883, 6 Ann. Cas. 1005; 8 R. C. L. 698; Whitney v. Lynn, 122 Mass. 343. If any cause of action existed, it was in the widow. Nichols v. Cent. Vt. R. Co., 94 Vt. 14, 109 A. 905, 12 A. L. R. 333; 8 R. C. L. 686; 17 C. J. 1145; Thompson v. Pierce, 95 Neb. 692, 146 N. W. 948; Larson v. Chase, 47 Minn. 307, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. Rep. 370; Finley v. Atl. Tr. Co., 220 N. Y. 249, 115 N. E. 715, L. R. A. 1917E, 852, Ann. Cas. 1917D, 726; Durell v. Hayward, 9 Gray (Mass.) 248, 69 Am. Dec. 284; Weld v. Walker, 130 Mass. 422, 39 Am. Rep. 463. Plaintiff's duty was to use diligence to minimize his damages. Ill. Cent. R. Co. v. Elliott, 17 Ala. App. 134, 82 So. 582; Worthington v. C. L. Co., 16 Ala. App. 614, 80 So. 688; Central of Georgia R. Co. v. Steverson, 3 Ala. App. 313, 57 So. 494; Sloss Co. v. Mitchell, 161 Ala. 278, 49 So. 851.

E. E. Garrison, of Birmingham, for appellee.

Brief of counsel did not reach the Reporter.

SAMFORD, J. The complaint upon which the recovery was had consisted of one count as follows:

"Count 2. The plaintiff claims of the defendants the sum of $5,000, as damages, for that heretofore, to wit, on the 30th day of July, 1921, the plaintiff had the custody of the remains of his dead son, James Morgan, Jr., for burial, and the defendant L. O. Lowe, a servant, agent, or employee of the defendant Southern Life & Health Insurance Company, a corporation, while acting within the line and scope of his employment, obtained from the plaintiff and wrongfully failed and refused to surrender to him on his due demand therefor a medical certificate of death made and signed by the physician last in attendance on the plaintiff's said dead son, and upon such form, and containing such matter, as was provided for by law as one of the prerequisites to the obtaining of a permit for burial of such decedent, and, as a proximate consequence of such wrongful failure and refusal, the plaintiff was compelled to leave said remains in the hands of an undertaker while he went in search of said physician for the purpose of securing another such certificate, and to postpone the burial of his said son for a long time, to wit, 24 hours, and by reason thereof said remains decayed or decomposed to such extent that they had to be buried quickly and without ceremony with only the undertaker, the driver of the hearse, and the gravedigger present, and the plaintiff was prevented from attending the last sad rites, and from paying a final tribute to his dead by having a befitting funeral service conducted, and deprived, contrary to his expectations, of the presence, comfort, consolation, and assistance which would have been rendered and extended to him in and about said burial by Eugenia Morgan, his wife, Herbert Morgan, his son, Susie Morgan and Christine Morgan, his daughters, and divers other close relatives and friends, suffering thereby great trouble and inconvenience and also great mental pain and anguish, for all of which he sues."

[1, 2] As against a wrongdoer, the nearest relation of the dead person present may maintain an action for an unwarranted interference with the burial of the body. The action is for a tort giving rise to an action irrespective of any contract in relation to the preparation for the burial. This plaintiff being the nearest relation present is a proper party plaintiff. 8 R. C. L. p. 696, par. 19, 17 Corpus Juris, 1145 (20) 3.

[3-5] The complaint states a cause of action and is not subject to any of the grounds of demurrer assigned. The plea was the general issue, and therefore, if the plaintiff proved the material allegations of the complaint to the reasonable satisfaction of the jury, he would be entitled to compensatory damages for the trouble and delay brought about as a proximate result of the wrong committed, as well as the loss of the consolation of plaintiff's wife and relatives at the time of the burial of his son. The plaintiff, in this action could not recover for mental pain and anguish and as to this the court so charged the jury, thereby eliminating that claim from the complaint. All of these questions were controverted, and were properly submitted to the jury.

[6] Charges 3, 4, and 6, given in writing at the request of plaintiff were correct state-

ments of the law relating to the burial of dead bodies, as provided by sections 5, 7, 9, and 11 of Acts 1919, pp. 909–918.

[7] As has heretofore been pointed out the questions as to a recovery of compensatory damages were properly submitted to the jury, and therefore charges asking affirmative instructions as to recovery in favor of defendants or either of them were properly refused. The plaintiff was not claiming punitive damages, and the court confined the recovery to compensatory damages for the wrong done to plaintiff by the wrongful interference with the burial of the body of his son, and hence charges 4, 5, 8, 9, and 18 refused to defendants were abstract. It is the intentional withholding and refusal to deliver the death certificate which gives the plaintiff the right of action, providing such wrongful act proximately cause the damage or injury.

[8] Where, beside the inconvenience and delay arising to plaintiff, in being forced, through and by the wrongful act of defendant to obtain a second certificate of death from the attending physician, the plaintiff was also subjected to vexation, wrong, or distress of mind as natural, proximate, and reasonably to be expected consequences of the wrong complained of, these last-mentioned results may constitute a support for an award of additional compensatory damages. It, therefore, follows that charges 6, 16, 17, 33, 34, 35, 36, 37, 43, and 46 were properly refused to defendant. East Tenn., etc., v. Lockhart, 79 Ala. 315; L. & N. R. R. v. Dancy, 97 Ala. 338, 11 So. 796; L. & N. R. R. v. Quick, 125 Ala. 553, 28 So. 14; A. C. G. & A. R. R. v. Brady, 160 Ala. 615, 49 So. 351; Taxicab Co. v. Grant, 3 Ala. App. 393, 57 So. 141.

[9-11] It is without conflict in this case that plaintiff was the father of the deceased; that, if he had a wife living, the wife was not present and had nothing to do with the custody of the body. In the absence of the wife, the father had the lawful custody of the body, and it was his duty to give it decent interment. 17 Corpus Juris, p. 1146 (24) 2. It follows that charges 7, 32, 41, and 42, requested by defendants, were properly refused. As has heretofore been seen, the question of exemplary damages does not arise, and hence written charges 10, 14, and 15 were properly refused.

[12] Under plea of the general issue "in short by consent," the defendants might have shown that plaintiff did not use reasonable diligence in securing a second certificate of death, so as to minimize the damage on account of defendants' wrong; but this was a question for the jury from all the evidence in the case, and, where as here there was evidence offering inferences pro and con, affirmative instructions were not appropriate. Ill. Cen. Ry. v. Elliott, 17 Ala. App. 134, 82 So. 582.

[13-16] It was relevant in this case to prove where the blank certificates of the board of health were kept for the convenience of those requiring them. The fact that the body was not embalmed was relevant as going to show the urgent necessity of avoiding delay in carrying out the funeral arrangements. It was also relevant to show the length of time the body of the dead man remained in the undertaker's shop before it could have been legally buried. Whether this evidence was technically objectionable at the time it was introduced is of no moment, as it was all later connected by the testimony of plaintiff. All of the facts and circumstances, connected with the burial, tending to show delay caused by the refusal of defendants to deliver the certificate of death, were relevant and admissible.

[17, 18] It was immaterial as to who were the members of plaintiff's family at the time of the death of plaintiff's son, but the questions and answers developing this testimony were of such a character as not to injuriously affect defendants' rights, and the asking of leading questions is in the discretion of the trial court.

[19] It was not relevant to any issue in this case as to when plaintiff obtained an insurance policy on the dead man from defendant company nor that suit on that policy was defeated on the ground of fraud. Such could only tend to multiply the issues.

A great number of questions were propounded to witnesses by defendants, seeking to show that it had been the custom of the company in dealings with its policies to accept, as proof of death, the certificate of the attending physician. The rulings of the court on these questions gave rise to many exceptions here insisted upon. The custom of the defendant company in this regard did not bind this plaintiff. As matter of fact, such certificate was not designed for the insurance company, but was required by law for use in the burial of the body of plaintiff's son. The court did not err in its several rulings on these questions, calling as they did for irrelevant and immaterial evidence. Whether the company accepted the doctor's certificate as proof of death is beyond the question here. The question here is: Did the defendants have the right to its possession after demand for its return?

[20] If, as is stated in appellant's brief, plaintiff had testified that defendant Lowe "cursed" him at a certain time and place, it would have been error for the court to refuse to permit Lowe to testify that he did not do so; but the plaintiff testified, not that Lowe "cursed" him, but that Lowe said to him, "I won't give you a God damn thing," and at another time, "I'll maul hell out of you." If the questions had been framed with reference to the two expressions above quoted, doubtless the court would have permitted the answer denying them.

[21] The court in his oral charge proceeded

upon the theory that plaintiff had a right under one phase of the evidence to demand the return to him of the death certificate after defendants had refused payment of the benefit. In this conclusion we concur. The certificate of death was procured by plaintiff, was his property for a certain 'purpose, and he had right to demand its return from defendant company and its agent at any time before it had been tendered and accepted as proof of death under a policy of insurance issued by defendant company, in support of a claim made for payment under the policy. It follows that, when the excerpts from the court's oral charge are taken and considered along with the whole charge, they do not constitute error.

We find no reversible error in the record, and the judgment is affirmed.

Affirmed.

### On Rehearing.

The court notes the cautious imputation of a "lack of judicial pride" in the preparation of the original opinion in this case. It also notes the suggestion of the smallness of the amount involved and the "importance of the principle." Nor can we be unmindful of the able presentation of appellant's case through the agency of some of the most eminent attorneys at the bar of this state and the lack of presentation by the appellee, who, in the language of appellants in brief filed in support of this application, is· "poor ignorant negro," whose lawyer is dead.

The first insistence of error in the application for rehearing is made upon the contention that—

"When a man dies leaving a wife surviving him, the wife and not the father of the deceased is the person and the only person who can maintain an action against a wrongdoer for wrong done the dead body of deceased."

In R. C. L. p. 686 (5), it is laid down as a conceded rule that—

"On the death of a husband or wife, the primary and paramount right to possession of the body and to control the burial or other legal disposition thereof is in the surviving spouse and not in the next of kin."

And this rule seems to be supported by authority. The announcement of this rule, however, has grown out of cases where the contest was between interests seeking custody of the body or control of burial plans, such as the case of Enos v. Snyder, 131 Cal. 68, 63 P. 170, 53 L. R. A. 221, 82 Am. St. Rep. 330; O'Donnell v. Slack, 123 Cal. 285, 55 P. 906, 43 L. R. A. 388; Anderson v. Acheson, 132 Iowa, 744, 110 N. W. 335, 9 L. R. A. (N. S.) 217.

[22, 23] All of these cases, however, recognize as well-settled law that there is no property in the dead body of a human being, in the commercial sense of the term, and that the right to possession and disposition is in a sense a trust to be exercised for all having affection for the deceased and an interest in seeing the body decently interred.

[24-26] It follows that, while primarily the surviving spouse has the paramount right to the possession of a dead body, that right may. be waived, unless asserted by the spouse, and, in the case of an express or implied waiver, the right to possession is in the next of kin, which in this instance is the father. In the case of a dead body needing burial, the right of the spouse must be promptly asserted, or the right to possession of the body for the purposes of interment will be held to have been waived in favor of the next of kin. We have found no direct authority holding in hæc verba to the rule announced, but in Hackett v. Hackett, 18 R. I. 155, 26 A. 42, 19 L. R. A. 558, 49 Am. St. Rep. 762, a case much cited as authority, it was held that the right of the spouse to the possession of the body was dependent upon the peculiar circumstances of the case or the waiver of such right by consent or otherwise, and in the well-considered case of Larson v. Chase, 47 Minn. 307, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. Rep. 370, the justice writing the opinion, after stating the general rule, says:

"The right of the surviving wife (if living with her husband at the time of his death) is paramount to that of the next of kin. This is in accordance, not only with common custom and general sentiment, but also, as we think, with reason. * * * But this right is in the nature of a sacred trust, in the performance of which all are interested who are allied to the deceased by the ties of family' or friendship, and, if she should neglect or misuse it, of course, the courts would have the power to regulate and control its exercise."

[27, 28] We think it is equally in keeping with custom and common reason to hold that, where the wife is not living with her husband at the time of his death, or neglects or refuses to assume the trust incident to her right, a waiver of that right is implied and the right and duty immediately descends to the next of kin present and acting. When this is so, such next of kin having legal custody of the body also has legal rights in the body which the law recognizes and protects and any interference in such rights is an actionable wrong. Larson v. Chase, 47 Minn. 307, 50 N. W. 238, 14 L. R. A. 85, 28 Am. St. Rep. 370; Pierce v. Proprietors, etc., 10 R. I. 227, 14 Am. Rep. 667.

The English decisions bearing on the foregoing questions are of little value in aiding us to a correct conclusion, as all English cases and opinions are based upon a system of dealing with the dead, entirely at variance with that of the states of the American Union. A full discussion of these, together with a thorough treatise on the subject, may be found in the very able report of Hon. Sam B. Ruggles, referee to the Supreme Court of New York, in Re Widening of Beckman St. 4 Bradford's Rep. Appendix, p. 503. After

quoting from many American decisions, he reaches conclusions under five heads, which, so far as applicable to this case are:

(2) That "the right to bury a corpse and to preserve its remains is a legal right, which courts of law will recognize and protect; (3) that such right, in the absence of any testamentary disposition, belongs exclusively to the next of kin."

This report has been confirmed by the courts of New York, and cited and quoted as an authority by many of the courts of other states.

[29, 30] From a reading of all the decisions from the American courts, it seems to be the law: (1) A dead body is not property in the common commercial sense of that term, and subject strictly to the laws of descent and distribution; (2) that the person having charge of a dead body for burial is in the exercise of a sacred trust for all who may, from family ties or friendship, have an interest in the remains; (3) that the right of possession for burial is a legal right coupled with certain duties which the courts will protect and that an unlawful interference with these rights is a basis for suit for damages; (4) that, in case of husband and wife, the right of possession is in the surviving spouse, provided the husband and wife were living together at the time of the demise; ,(5) that the absence of the spouse, or his or her failure or refusal to act, has the effect of transferring the right of custody and duty of trusteeship to the next of kin in succession.

[31] (1) (2) (3) (4), supra, are, we think, supported by the weight of authority in the adjudicated cases. (5) is based upon the traditions, customs, and the necessities incident to .a proper respect for the dead and the case of Wright v. Hollywood Cem. Corp., 112 Ga. 884, 38 S. E. 94, 52 L. R. A. 621. In the instant case the wife was not present, and the only evidence that there was a wife is the testimony of the father:

"My son said he was married. He said he married up here in West Virginia, and was married at the time he died; but I never did see his wife, he just came and said he was married."

The dead man had been living with his father as a member of the family for some months before his death. Though he was sick and died, his wife never came or communicated or showed any interest in him. It therefore seems certain that they were not living together, and, if not legally separated, the facts would disclose a. waiver of any rights as to the custody of the body which she may have had.

[32] There is a duty imposed by universal feelings of mankind to be discharged by some one toward the dead; a duty and a right to protect from violation, which in this case devolved on the plaintiff, and, as was said in Burney v. Children's Hospital, 169 Mass. 57,

47 N. E. 401, 38 L. R. A. 413, 61 Am. St. Rep. 273:

"It would be discreditable to any system of law not to provide a remedy in such a case." Pierce v. Swan Point Cem., 10 R. I. 237, 14 Am. Rep. 667.

[33] The third and last proposition in appellant's brief on application for rehearing is that: "On the whole case, pleadings, and proof the defendants were entitled to a verdict in this case," or, failing this, that a new trial should have been granted, which we assume is a contention that the trial court erred in refusing the affirmative charge and overruling the motion for new trial. The brief then proceeds ·with argument interspersed with intentional or unintentional thrusts at the court, such as:

"We are not willing to accept the unreasonable ipse dixit of the court on such an unreasonable proposition as the final word on the subject. The court cannot sustain such a position on reason, authority, common experience, or common sense. The situation simply does not smell good to us"

—and others of a similar nature. Such expressions may have the effect of relieving the mind of counsel, but they add nothing by way of authority or logic to a consideration of the questions involved; on the contrary, they might create the impression that the absence of authority or logic demanded a substitute. Such expressions have no proper place in a brief.

[34] Let us see as to appellant's contention. If the plaintiff has a cause of action, has stated it in his complaint and proved it to the reasonable satisfaction of the jury, he would be entitled to a verdict. That the plaintiff had rights in the body of his son which the law will protect, if those rights are unlawfully interfered with, we have hereinabove attempted to demonstrate. Was the retention of the death certificate by the defendants a legal wrong, and, if so, did this wrong proximately cause a delay in the burial of plaintiff's son for such time as to damage the plaintiff as alleged in the complaint? The certificate of death was most certainly the property of the plaintiff at the time he took it to the office of defendants. According to plaintiff's testimony, the defendant did not accept the certificate as proof of loss under an insurance policy. According to plaintiff's testimony, plaintiff said to defendant:

"Well, white folks, if you ain't going to pay off, suppose you let me have my death proof to let (get) my boy buried."

And:

"When I handed the paper to him, and he looked at it and read it and shoved it in the drawer, he said, 'Well, we don't do nothing like that,' and he rubbed his hands."

And:

"White·folks, would you mind giving me my paper to have my boy buried?"

And defendant replied:

"I won't give you a God damn thing; if you don't get out of here, I will maul you with my fists."

[35] The defendant was charged with a knowledge of the law requiring a certificate such as had been presented to him before a burial of the son could take place. Code 1923, § 3870. He was also charged with a knowledge of the health laws of the state embraced in chapter 31, article 1, of the Code of 1923, §§ 1071 and 1073, together with the rules and regulations promulgated by the state and county boards in conformity with those statutes, embracing as they do the form of death certificate for obtaining a burial permit for the dead.

[36, 37] The custom of defendants to receive these certificates as proofs of death from their policy holders could not be binding on plaintiff, unless he knew of the custom. Where custom is not general in character, it is binding only upon persons who have knowledge of its existence. 8 R. C. L. 163; 4 Mich. p. 608, par. 12; U. S. Ins. Co. v. Hill, 9 Ala. App. 222, 62 So. 954; Cooley's Brief, 344S (f). Besides, according to plaintiff's testimony, defendant was informed for what purpose plaintiff desired a return of the certificate. It is undeniably a fact that the refusal of defendant to return the certificate made it necessary for plaintiff to obtain another, and, according to plaintiff, this could not be done until Sunday morning, thereby causing such delay as that—

"When I got to the undertaker's shop, I couldn't hardly get to the door. The flies were around the door just like bees. I walked in to look at the boy and it looked like to me that he had busted, or something, it was a whole lot of water or something had run out of the coffin and down on the floor, and the flies were simply just like bees, there couldn't hardly nobody get in there."

If, as had been said, there had been no tender and acceptance of the certificate as claimed by plaintiff, the plaintiff had a right to the certificate. He could not bury his dead without one. He had procured one for that purpose. The defendant unlawfully and intentionally withheld it, and, as a proximate result of defendants' wrong, the funeral rites were interfered with, and, according to plaintiff's evidence, to his serious damage.

It is the proud boast of our system of jurisprudence that the law gives a remedy for every wrong equally to the poor and friendless as to the rich and powerful, and, if the plaintiff's evidence is to be believed, which evidently the jury did, and which we are not authorized to go behind, there was a wrong

and a resultant damage. That being true, the law will not fail him in the remedy.

The application is overruled.