COMMERCE UNION BANK, Petitioner,

*v.*

JOHN H. HORTON, Administrator, Respondent.

475 S.W.2d 660

(*Nashville,* December Term, 1971.)

Opinion filed January 17, 1972.

ALFRED E. ABBEY, RUSSELL H. HIPPE, JR., TRABUE, MINICK, STURDIVANT & HARBISON, Nashville, or petitioner.

ANDREW D. TANNER, Nashville, for respondent.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

This case is before the Court by certiorari to the Court of Appeals. The administrator sued the bank to recover on a bank deposit. The bank pleaded the presumption of payment arising after the lapse of sixteen years. The trial judge recognized and applied the presumption. The Court of Appeals reversed the trial judge and awarded judgment. This Court granted certiorari, after full consideration, because it is of opinion the presumption of payment after the lapse of sixteen years applies to a

deposit in a bank of this character: a deposit in a checking account.

The facts are that in 1950 the administrator's intestate deposited $1,251.38 in a checking account in the bank. She was issued a bank book which still contains a single entry in the amount of this deposit. This bank book is to be distinguished from a savings account passbook, as to which, possibly different rules apply.[1]

The depositor died in 1968, and plaintiff was appointed her administrator in April 1969. Thereafter, he presented the bank book to the bank and made formal demand for payment. This demand, after thorough search and after no record could be found concerning this account except the original signature card of the depositor, which was found in a closed-out file, was rejected. The proof was that under the bank's usual procedure the signature card would be placed in the closed-out file when the account was paid out. The officers of the bank further testified that its records were routinely purged and records more than ten years old destroyed. They also testified that the bank no longer had microfilm records pertaining to the years 1950 to 1955. They also testified that they had not examined all of the microfilm records made of all checks passing through the bank each day because this would be practically impossible, as the microfilm records of checks were not matched to any particular account.

■ The administrator introduced five witnesses who testified that decedent had discussed her bank account with him prior to her death. This testimony was rejected

---

[1] Section 45-445 T.C.A. enacted subsequent to this suit, now regulates bank deposit records.

on objection by the bank that it was hearsay, but was admitted to make a record. It was not considered by the trial judge. And not coming within any exception to the hearsay evidence rule, is inadmissible.

This recitation discloses that the bank, after pleading payment, relied on the presumption of payment after the lapse of sixteen years, and, in addition to this defense, sought to show by an examination of its records that as a matter of fact, there was no such account as that sued on then in the bank. Against this, the administrator sought by the introduction of hearsay evidence to prove there was such an account, and on the general equity of the case, involving as it does a single deposit in an amount which it would not hurt the bank to pay, have this case treated as an exception to the presumption of payment rule. All of this calls into consideration the validity of the presumption of payment from a lapse of time.

The best discussion of this rule that we have found is under the title ''Payment'' in 21 R.C.L., sec. 144 et seq. as follows:

''In General.—In all civilized countries where the law is administered as a science, having reference to the peace, quiet, and progress of society, as well as to the protection of individual rights, it has been thought wise that there should be some limit to litigation, some boundary beyond which contests or matters open to contest should be regarded as settled. Early in the judicial history of England the presumption of payment was raised after a great lapse of time between the creation of an obligation and an attempt to enforce it in the courts. This presumption became a part of

the law of the United States and is applied in all jurisdictions. It originated in equity in the application of the maxim vigilantibus non dormientibus jura subveniunt, but was soon engrafted in the common law, and has since been steadily applied. It is not to be confused with the equitable doctrine of laches, since laches is generally regarded as being not delay alone, but rather delay working a disadvantage to another. Lapse of time may also set up the show that no claim ever existed as well as to raise a presumption of payment." 21 R.C.L. sec. 144, p. 128.

Since the Court of Appeals seemed to equate the presumption of payment to the statute of limitations, and seemed to decide the case on statute of limitations cases, we quote with approval the following from the same authority:

"Statute of Limitations Distinguished.—The presumption of payment from the lapse of time differs essentially from a statute of limitations which presupposes an established substantive right, but forbids its enforcement by the customary remedies. The presumption of payment may be rebutted by sufficient evidence, no matter how long the time may be; but a statute of limitations cuts off the right of action, although it may be admitted that no payment has ever been made. A statute of limitations must ordinarily be pleaded and relied on by the defendant, while the presumption of payment arising from the lapse of time is usually drawn from the plaintiff's own case, and when so drawn it can hardly be regarded as a matter of affirmative defense." 21 R.C.L. sec 146, p. 130.

And, in this connection we point out that the statute of limitations was not pleaded by the defendant and so was not involved in this case.

The reasonableness of this presumption early impressed itself on this Court, resulting in this statement in *Thompson v. Thompson,* 39 Tenn. 405, 407 (1859): "The rule so often recognized by this Court, that if a bond, or a note under seal, be suffered to lie dormant for a space of sixteen years, without demand being made, or payment of interest, or other explanatory circumstances to show it still in force, payment will be presumed upon the mere fact of the lapse of time, is not now to be questioned".

Earlier and later, cases recognizing and applying this rule are, *Blackburn v. Squib,* 7 Tenn. 60 (1823); *Anderson v. Settle,* 37 Tenn. 202 (1857); *Yarnell v. Moore,* 43 Tenn. 173 (1866); *Harris v. Vaughn,* 2 Tenn.Ch. 483 (1875); *Connecticut Mutual Life Ins. Co. v. Dunscomb,* 108 Tenn. 724, 69 S.W. 345 (1902); *Poole v. First Natl. Bank of Smyrna,* 29 Tenn.App. 327, 196 S.W.2d 563 (1946).

■ While none of these cases involved a bank deposit, we see no reason why an exception to this most salutary rule should be made in favor of a deposit in a checking account in a bank. To the contrary, bearing in mind the nature of a checking account, which, since it foregoes the interest usually paid on a savings deposit, carries with it the idea of current or contemporary use, we consider it most reasonable that the presumption of payment after sixteen years lapse of time should apply. Moreover, we are of opinion that a requirement that a bank must forever retain the evidence of payment of its indebtedness

is not only contrary to the rule of law we have been discussing, but contrary to the public policy of the State of Tennessee as evidenced by its statute law on the subject. For example, T.C.A. sec. 45-422, at the time this suit was brought, provided that no bank was required to keep cancelled checks more than six years from the date of payment and T.C.A. sec. 45-432 provided that banks were not required to preserve records relating to statements of account longer than six years from the date of the statement.

So far as we have been able to determine the applicability of the presumption of payment arising from lapse of time to a bank deposit has been considered in only two reported cases from other jurisdictions, and in both of them the presumption was held to apply. *Boscowitz v. Chase Nat. Bank*, 202 Misc. 1016, 111 N.Y.S.2d 147 (N.Y.Mun.Ct.1952); *Blackstone v. First Nat. Bank of Cody*, 64 Wyo. 318, 192 P.2d 411 (1948).

■ The upshot of the matter is that this Court is of opinion the presumption of payment after the lapse of sixteen years should have been applied to this checking account.

We find nothing in the evidence with respect to the bank's examination of its records which in any way rebuts this presumption. The bank examined all of its existing records, with the exception of the microfilm discussed below, and found no record of any account with the decedent. Specifically, the record search disclosed that there was no current account in the decedent's name, and that no such account had been closed since 1955, the earliest date from which the bank had any pertinent records. The clear implication is that the account was closed

sometime during the period between the date of deposit and 1955. It is true that the bank did not examine the microfilm made daily of each check that cleared the bank. The bank did have such microfilms dating back to some time in the period between 1955 and 1960. We think it was excused from making such a search by the utter unreasonableness of such a requirement,[2] together with the fact that there was total absence in any other records in the bank of any evidence that the deposit continued in the bank so as to require such an examination.

After all, all bank deposits are made and held on the presumption of honesty and good faith, and when witnesses who are in no way discredited, testify to fruitless searches of the bank records, this testimony must not be received as simply negative evidence, but as some evidence that the records which would ordinarily evidence the existence of the deposit in the bank are not to be found, and consequentially that there is no such deposit.

The judgment of the Court of Appeals is set aside, and the judgment of the Circuit Court of Davidson County is affirmed.

DYER, CHIEF JUSTICE, CHATTIN, CRESON and McCANLESS, JUSTICES, concur.

---

[2] Checks are not microfilmed so that they can be related to a particular deposit or account. All checks presented each day are microfilmed so unless some particular time period can be designated every picture of every check, which must run into hundreds of thousands of pictures, would have to be examined to exhaust this remote possibility of evidence.