A.N. ESTES, Jr., Plaintiff–Appellant,

v.

WOODLAWN MEMORIAL PARK, INC., Claude Palmer and Virginia Palmer, Defendants–Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 22, 1989.

Thomas E. Watts, Jr., Nashville, for plaintiff-appellant.

John E. Quinn, Walter Clark, Nashville, for defendants-appellees.

## OPINION

TODD, Presiding Judge.

The plaintiff, A.N. Estes, Jr., has appealed from a nonjury judgement dismissing his suit seeking the disinterment of the remains of his deceased wife and daughter from a plot in Woodlawn Memorial Park for reinterment in Mt. Olivet Cemetery.

As would be expected, the interrelationships of families are involved in the present controversy.

Mae Binkley and Minnie Binkley were sisters. Mae married plaintiff and became Mae Binkley Estes. Nettie Sue Estes was born to this marriage. Minnie married a man named Morris and became Minnie Binkley Morris. Virginia Morris was born to Minnie Binkley Morris and her husband and is the niece of Mae Binkley Estes and the cousin of Nettie Sue Estes. Virginia married Claude Palmer and became Virginia Morris Palmer. Mr. and Mrs. Palmer are sued as the owners of the burial plot from which the removal of said remains is sought.

In October 1981, the defendants Palmer purchased their plot adjoining the plot of Mrs. Morris, mother of Mrs. Palmer and sister of Mae Binkley Estes. At the time of the purchase, the purpose of the plot was discussed. It was announced that three of the graves in the Palmer plot were intended for plaintiff, his wife and his daughter. The wife and daughter expressed their desires to be buried in the plot.

On June 21, 1984, the daughter, Nettie Sue Estes died. Her mother, Mae Binkley Estes, made all funeral and burial plans with the acquiescence of plaintiff. Nettie Sue was buried in one of the graves in the Palmer lot which had been reserved for plaintiff, his wife and daughter.

After the death of Nettie Sue, her mother, Mae Binkley Estes, ceased to live with plaintiff. On January 7, 1985, Mae Binkley Estes died. Plaintiff signed the following document:

To whom it may concern:

I, A.M. Estes, Jr., husband of Mrs. Mae Estes, who died on January the 7th 1985, hereby give permission to Claude and Virginia Palmer to make arrangements for the funeral of Mrs. Estes at Roesch Patton Dorris and Charlton Funeral Home.

Plaintiff asserts that the preceding did not authorize the selection of the place of burial. However, he attended the funeral and burial and made no objection to the burial arrangements. Plaintiff also asserts that he signed the agreement under duress because the attorney for the Palmers threatened him with an inquisition of lunacy if he did not do so. At the time, plaintiff exhibited some evidence of mental imbalance including an insistence that the remains of Nettie Sue Binkley Estes be cremated against her expressed wishes. Under the circumstances, this Court does not find duress sufficient to invalidate the agreement.

On January 11, 1985, the remains of Mae Binkley Estes were interred in one of the graves reserved in the Palmer plot for plaintiff, his wife and daughter. Plaintiff was present and did not object.

Virginia Palmer testified that the remaining grave of those allocated to the three members of the Estes family is reserved for the remains of plaintiff, and that she and her husband are willing to convey to plaintiff the right of burial of his remains in said grave.

On March 19, 1987, plaintiff filed this suit seeking to compel the consent of Mr. and Mrs. Palmer for the disinterment of the remains of Mae Binkley Estes and Nettie Sue Estes and to compel Woodlawn Memorial Park, Inc., to perform the disinterment.

Upon hearing the cause fully, the Trial Judge found the issues in favor of the defendants and dismissed plaintiff's suit.

On appeal, plaintiff presents two issues, of which the first is as follows:

I. Can the paramount right of a surviving husband and parent to select the final burial place for his deceased wife and daughter be overridden by the wishes of the wife's relatives?

■ There is no universal rule regarding the right of persons to bury the dead, but each case must be considered in equity on its own merits. *Sacred Heart of Jesus Polish National Catholic Church v. Soklowski*, 159 Minn. 331, 199 N.W. 81, 33 A.L.R. 1427, (1924); *Pettigrew v. Pettigrew*, 207 Pa. 313, 56 A. 878, 99 Am.S.R. 795, 64 L.R.A. 179 (1904); *Burnett v. Surratt*, Tex.Civ.App., 67 S.W.2d 1041 (1934).

■ No matter in whom the right of burial rests, it is in the nature of a sacred trust for the benefit of all who may, from family ties or friendship, have an interest in the remains. *Southern Life Health Ins. Co. v. Morgan*, 21 Ala.App. 5, 105 So. 161, cert. den. 213 Ala. 413, 105 So. 168 (1925); *Teasley v. Thompson*, 204 Ark. 959, 165 S.W.2d 940 (1942); *Wales v. Wales*, 21 Del.Ch. 349, 190 A. 109 (1936).

■ The right of sepulchre is not absolute, but must yield when in conflict with the public good, or the demands of justice require a subordination. *Tkaczyk v. Gallagher*, 26 Conn.Supp. 290, 222 A.2d 226, affirmed, 153 Conn. 744, 220 A.2d 163

(1966); *Gray v. State*, 55 Tex.Cr. 90, 114 S.W. 635, 22 L.R.A.N.S. 513 (1908).

■ Absent an expressed desire of deceased, the surviving spouse and, if no surviving spouse, the next of kin, has the right of custody and burial of the remains of the deceased. 25A C.J.S. Dead Bodies § 3, pp. 491, 492, notes 11, 12.

■ The spousal right of burial may not apply when the spouses had separated and were not living together at the time of death. *Rosenblum v. New Mt. Sinai Cemetery Assn.* Mo.App. 481 S.W.2d 593, 54 A.L.R.3d 1031 (1972); *Southern Life & Health Ins. Co. v. Morgan*, supra; *Dutton v. Brashears Funeral Home*, 235 Ark. 120, 357 S.W.2d 265 (1962).

■ The right to control burial may be waived. *Teasley v. Thompson*, supra; *Fischer's Estate v. Fischers*, 1 Ill.App.2d 528, 117 N.E.2d 855 (1954); *Foster v. Foster*, Tex.Civ.App. 220 S.W. 215 (1920); *Southern Life & Health Ins. Co. v. Morgan*, supra; *Dutton v. Brashears Funeral Home*, supra.

■ It is generally recognized that every person has the right to determine the disposition which shall be made of his body after death. *Fidelity Union Trust Co. v. Heller*, 16 N.J.Super. 285, 84 A.2d 485 (1951).

■ It has been held that the wishes of the deceased are paramount, that the right of a decedent to determine the disposition of his remains is a personal right, not testamentary in character, that legal compulsion may not attach to the wishes of deceased which are nevertheless entitled to respectful consideration, are entitled to great weight and ordinarily are given effect even in the face of opposition by the surviving spouse or next of kin. 25A C.J.S. Dead Bodies § 3, p. 494, notes 18.45 18.50, 18.55, 18.60, 19.

■ There is a distinction between rights existing prior to burial and those after burial, because after its interment the remains are in the custody of the law. Disinterment of a dead body is not a matter of right, a disturbance of its resting place and its removal are subject to the control

and direction of a court of equity and, this generally requires the exercise of discretion by the Court. 25A C.J.S. Dead Bodies § 4(1) pp. 495, 496 notes 28, 28.5, 29, 29.5.

■ Disinterment of a body is not favored in the law. *Strickland v. Tant*, 41 N.C.App. 534, 255 S.E.2d 325, cert. den. 298 N.C. 304, 259 S.E.2d 917 (1979).

■ Except in cases of necessity and for laudable purposes, it is the policy of the law that the sanctity of the grave should be maintained and that a body, once suitably buried, should remain undisturbed. A court will not ordinarily order or permit a body to be disinterred unless there is a strong showing that it is necessary and that the interests of justice require it. However, there is no universal rule and each case must depend on its own facts and circumstances. 25A C.J.S. Dead Bodies § 4(1), pp. 496, 497, notes 30, 30.5, 31, 32.

■ In determining whether a dead body should be disinterred for burial elsewhere, the courts will generally take into consideration whether the one claiming the right of disinterment consented to the first place of interment. *Sullivan v. Catholic Cemeteries Inc.*, 113 R.I. 65, 317 A.2d 430 (1974); *Theodore v. Theodore*, 57 N.M. 434, 259 P.2d 795 (1953).

■ Thus, subject to exceptions, a decedent's spouse who has consented to the burial of decedent's body in a certain place cannot afterward remove the remains against the will of decedent's next of kin or the owner of the plot. 25A C.J.S. Dead Bodies § 4(2) pp. 504, 505, notes 66, 67, 67.5.

■ The uncontroverted evidence shows that both Mae Binkley Estes and Nettie Sue Estes, wife and daughter of plaintiff, expressed their desire to be buried where their bodies now lay, that the body of Nettie Sue was buried at its present resting place at the direction of her mother with the acquiescence of plaintiff, and that plaintiff expressly agreed for the defendants Palmer to plan and pay for the funeral of Mae Binkley Estes who was buried in her present resting place by the acquiescence of plaintiff.

It is also uncontradicted that a grave is reserved and available for the burial of plaintiff with his wife and daughter.

Plaintiff's only justification for disinterment of the bodies of his wife and daughter is that he desires to be buried with them in another location because of a supposed animosity of the Palmers toward him which they deny.

The evidence and the above cited law fully support refusal of disinterment. No merit is found in plaintiff's first issue.

■ Plaintiff's second, and last, issue is as follows:

II. Is hearsay testimony by the relatives of a deceased wife and daughter admissible to seek to establish the desire of those decedents to be buried in a location opposed by the spouse and father?

During the testimony of Virginia Palmer, the following occurred:

Q. The whole family was there just about?

A. Yes, at my house.

Q. Including Nettie and her mother and her father?

A. That's right.

Q. Was there any discussion at that time about the lots, about the cemetery lots?

A. Yes, we talked about them and they knew that they had graves there. They expressed a desire—In fact, Nettie said she wanted to be buried next to my mother. She always looked on my mother as—really, as a grandmother because she was so much—had always been in our home, and she didn't look on her as an aunt.

Of course, that was impossible. My sister is already buried there, where my mother will be buried. But she's buried next to my sister.

Q. As far as Mae, did she express any thoughts about that at that time?

A. She wanted to be buried so we'd all be together.

Plaintiff's objection to the foregoing testimony was overruled.

It is hornbook law, requiring no supporting citation, that hearsay, that is evidence of factual statements made out of court, is not admissible except under a recognized exclusion from or exception to the hearsay rule. That is, some out-of-court utterances are deemed to be not hearsay for various reasons and are excluded from the rule. Other out-of-court statements are admittedly hearsay, but are admissible under an exception to the rule.

Appellant concedes that hearsay is admissible to show the state of mind of the declarant, but insists that hearsay is inadmissible to prove the ultimate fact sought to be established.

*Campbell v. Henley,* 172 Tenn. 135, 110 S.W.2d 329 (1937), cited by plaintiff, was a will case in which the proponent offered testimony that the deceased had said that he had made a will. The Supreme Court held that such declaration of the deceased was incompetent to show the execution of the proposed will which was unsigned and unwitnessed. In that case, the issue was whether the deceased had performed the act of due execution of a will. His hearsay statement that he had done so was not offered to show his intent in committing an act, but to show the commission of the act. In the present case, the issue is whether the deceased orally expressed a desire as to place of burial. Unlike the creation of a will, which is strictly regulated by law, the expression of a desire as to place of burial may be by voice without any formality of writing, signature or witness.

Stated otherwise a desire or intent or even belief that a will has been executed is immaterial and irrelevant until the act of due execution is otherwise shown; but where the desire or intent as to place of burial is material and relevant, the fact or act of the verbal expression of the desire or intent is material, relevant and competent.

Plaintiff also relies upon *Harry Levitch Jewelers v. Jackson,* Tenn.1978, 573 S.W.2d 746, which was a creditor's claim against the estate of a deceased based upon a note.

The executor offered, and the Trial Court admitted testimony that during his lifetime, deceased stated that the note was given without consideration. The Supreme Court reversed and said:

It is fundamental that not every unsworn, extrajudicial statement by a party litigant constitutes admissible evidence. Such testimony is barred by the hearsay rule, unless it constitutes an exception to that rule or is admissible under some other principle of evidence. Admissions constitute the most familiar exceptions to that rule. However, even self-serving declarations of a party may be admissible as an excited utterance, as an expression of pain, a recital of medical history to a physician, a declaration showing a state of mind, or the like.

The testimony in the present case, even though offered by a witness who was competent under the exclusionary statute, in our opinion constituted nothing more than self-serving declarations, and should have been excluded.

573 S.W.2d at 747.

In the cited case, the factual issue was not existence or expression of desire or intent, but whether consideration had passed. The hearsay assertion of deceased or any other person as to whether consideration passed was inadmissible, unless in conformity with some recognized exclusion from or exception to the hearsay rule, such as an admission of a party litigant against his position in the pending suit.

Plaintiff also cites *Commerce Union Bank v. Horton,* 1972, 225 Tenn. 679, 475 S.W.2d 660, wherein an administrator sued a bank to recover an alleged bank deposit 18 years previous to suit. The bank retained no record of the deposit except a signature card. The Trial Court excluded testimony that deceased had discussed the bank account during her lifetime. The Supreme court affirmed, holding that the testimony did not come within any exception to the hearsay evidence rule. In the cited case, the issue of fact was whether a bank account existed. Out of court statements as to its existence were inadmissible, unless made by a representative of the bank as an admission of a party. In the present case the issue is the existence of a desire or

intent, as to which declarations of the person involved are admissible.

 Where, regardless of the truth or falsity of a statement, the fact that the statement was made is relevant, the hearsay rule does not apply. *Cannon v. Chadwell*, 25 Tenn.App. 42, 150 S.W.2d 710 (1941).

No merit is found in plaintiff's second and last issue.

The judgment of the Trial Court is affirmed. Costs of this appeal are adjudged against the plaintiff. The cause is remanded to the Trial Court for such further proceedings, if any, as may be necessary and proper.

Affirmed and remanded.

CANTRELL and KOCH, JJ., concur.