Frank and Margie Rollins instituted an action to recover compensatory and punitive damages for the unauthorized and unnecessary internal postmortem examination of their son, Jack Rollins. The named defendants were Calhoun County; Ralph Phillips, individually and as coroner of Calhoun County; and Alabama Power Company. In February 1988, the trial court entered a final summary judgment for Alabama Power Company. No appeal was taken from that judgment. In February 1989, the trial judge entered a summary judgment for Calhoun County and Ralph Phillips.
The relevant facts may be stated as follows: In July 1985, Jack Rollins, while employed by Alabama Power Company as a lineman, was accidentally electrocuted. He was pronounced dead by an attending physician at the Northeast Alabama Regional Medical Center emergency room. By way of answer to the plaintiffs' statement of their claim, Ralph Phillips admitted that he thereafter requested the Alabama Department of Forensic Sciences to perform an autopsy, to which Frank and Margie Rollins were vehemently opposed. The autopsy was performed by Joseph Embry, M.D., a forensic pathologist at the Alabama Department of Forensic Sciences Laboratory in Birmingham.
The only issue presented is whether, under these circumstances, summary judgment was proper. Rule 56, A.R.Civ.P., sets forth a two-tier standard for granting summary judgment. That rule requires the trial court to determine that: 1) There is no genuine issue of material fact, and 2) the moving party is entitled to a judgment as a matter of law. The action in the present case was commenced after June 11, 1987; therefore, the applicable standard of review is the "substantial evidence rule." Ala. Code 1975, § 12-21-12
(Supp. 1988).
The appellees contend that the autopsy performed upon the body of Jack A. Rollins was a lawful and authorized act and that they were thus entitled to a judgment as a matter of law.
The duties of a coroner, as they relate to the facts of the present case, are set out in Ala. Code 1975, § 15-4-2:
 "Examination of body and report by coroner; postmortem, autopsy or internal examination of body and report by physician or surgeon.
 "(a) When a coroner has been informed that a person is dead in the county and that such person died without being attended or examined by a legally qualified physician, the coroner shall forthwith proceed to the place where the dead person is lying, examine the dead body to ascertain the cause of death and report same in the same manner as inquests are reported.
 "(b) When a coroner is unable to determine the cause of death, he may summon any physician or surgeon, who shall make an external postmortem examination of the dead body and report his opinion of the cause of death to the coroner in writing.
 "(c) If the surgeon or physician is unable to determine the cause of death from an external postmortem examination *Page 1008 
and the coroner has reasonable cause to believe that deceased came to his death by unlawful means, the coroner may in such cases order any physician or surgeon to perform an autopsy or internal examination on the dead body, and report the findings of such autopsy to the coroner in writing."
Plaintiffs argue in their brief that "none of the above factors, all of which [they argue] must co-exist to authorize an autopsy, existed, it is clear that the coroner [Phillips] was without authority to order an internal postmortem examination."
In support of their position, plaintiffs place much reliance on the affidavit of Don Taylor. That affidavit states as follows:
 "My name is Don Taylor. I reside in Ardmore, Tennessee. I am a licensed funeral director and embalmer in Alabama and Tennessee. I began working in funeral homes in 1950 at Usrey Funeral Home in Anniston, Alabama, and I have been involved in the profession since that time.
 "I have a BS degree from Alabama A M, majoring in Biology and minoring in Chemistry. I have a degree in Mortuary Science from Jefferson State Junior College. I also have a master's degree.
 "In 1986, I retired as the director of the Criminal Justice Program at Northeast State College, Rainsville, Alabama, where I taught forensic sciences. My specialty was Medical and Legal Investigations of Deaths, which I taught for 15 years.
 "On July 16, 1985, I was in Anniston, Alabama, when I learned of the death of Jack Rollins. I immediately called his father, Frank Rollins. Mr. Rollins was very upset because an autopsy had been ordered on his son, and he said he had been trying to locate me to see if I might assist him. At his request, I called Ralph Phillips to see why an autopsy had been ordered. I told Mr. Phillips the boy had died on the operating table at the Regional Medical Center. A physician had been working on him for over an hour when he died. Of course, Mr. Phillips already knew this.
 "I told Mr. Phillips he was overstepping his bounds, and that he was not authorized to do an autopsy on Jack Rollins. I asked him to rescind his request. He said it was too late as Jack's body was already in Birmingham. I told him I would send a hearse after Jack right then if he would call and authorize the release of the body. He ultimately refused my request.
 "He definitely knew that at no time did Jack's family consent to the autopsy. Frank Rollins begged him not to allow the autopsy to be performed.
 "Mr. Phillips told me he did not examine the body. He said he did not undress it because the state toxicologist did not like for anything to be changed. This made no sense to me.
 "I viewed Jack's body. Given the circumstances surrounding Jack's injury, the cause of death was clear. His skin over his floating rib was blue and black. This was obviously where he was grounded to electrical current. On the ball of his foot was a small tear, surrounded by yellow skin with a red 'halo' around it. This is where the current exited his body. Jack Rollins was electrocuted, and any coroner with some 15 years of experience who inspected the body would have known it.
 "I do not know why Ralph Phillips ordered this autopsy, but it was not because the death was due to 'unnatural causes.' Jack died while attended by a physician, and there was no evidence at all that he died from unlawful means."
Upon an examination of the record, restricting our review to the evidence that would be admissible at trial, we find there to be questions of fact for a jury's determination.
It is a matter of common knowledge in civilized society that close relatives and friends possess deep-seated feelings and emotions regarding the remains of their dead. The person or persons with the duty of burying a loved one have the right to see that the body is preserved and their feelings in relation thereto protected.
The same principle is espoused, but in different language, in the case of Louisville N.R.R. v. Wilson, 123 Ga. 62, 63,51 S.E. 24, 25 (1905), as follows: *Page 1009 
 "Death is unique. It is unlike aught else in its certainty and its incidents. A corpse in some respects is the strangest thing on earth. A man who but yesterday breathed and thought and walked among us has passed away. Something has gone. The body is left still and cold, and is all that is visible to mortal eye of the man we knew. Around it cling love and memory. Beyond it may reach hope. It must be laid away. And the law — that rule of action which touches all human things — must touch also this thing of death. It is not surprising that the law relating to this mystery of what death leaves behind cannot be precisely brought within the letter of all the rules regarding corn, lumber and pig iron. And yet the body must be buried or disposed of. If buried, it must be carried to the place of burial. And the law, in its all-sufficiency, must furnish some rule, by legislative enactment or analogy, or based on some sound legal principle, by which to determine between the living questions of the disposition of the dead and rights surrounding their bodies. In doing this the courts will not close their eyes to the customs and necessities of civilization in dealing with the dead and those sentiments connected with decently disposing of the remains of the departed which furnish one ground of difference between men and brutes."
We find in 22A Am.Jur.2d Dead Bodies § 3 at 10, 11 (1988), the following observations regarding the question before us:
 "Although there is no right of property as such in a dead body, the courts have recognized that a quasi-property right in dead bodies vests in the nearest relatives of the deceased, arising out of their duty to bury their dead. This right corresponds in extent to the duty from which it arises, and may include rights to possession and custody of the body for burial, to prevent the corpse from disturbances after burial, or to remove it to a proper place."
With regard to the question whether a coroner can be held liable for unauthorized autopsies, the following C.J.S. quotation provides an affirmative response:
 "Where a coroner, without the consent of the next of kin, orders or performs an autopsy in a case in which he lacks authority to do so, the next of kin have a right of action for damages against the coroner. . . ."
25A C.J.S. Dead Bodies § 8(3)(c), at 514 (1966).
By the same token, however, a county coroner possesses statutory authority, pursuant to § 15-4-2, to order the performance of necessary autopsies. Obviously, for legitimate public policy reasons, this statute sets forth conditions and circumstances under which the State's interests override individual rights. We hold that a jury question is presented as to whether Ralph Phillips, while acting within the line and scope of his employment with Calhoun County, wrongfully requested that an autopsy be performed on the corpse of Jack Rollins.
Consistent with the above, we reverse.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.