VOLTERRA, J.
I. Introduction
This case arises out of the performance of a postmortem biopsy of plaintiffs deceased husband in a manner that allegedly exceeded the scope of consent given by plaintiff Mrs. Frances Kelly. Defendants now submit a motion for summary judgment arguing that there remain no genuine issues of material fact in dispute and that under the law, they are entitled to judgment. For the reasons that follow, defendants’ motion is ALLOWED.
II. Background
After review of the parties’ submissions, the court understands the facts, viewed in favor of plaintiff, to be these:
On August 11, 1994, at age 42, plaintiffs husband, Michael Kelly, died of Non-Hodgkins Lymphoma at the Brigham & Women’s Hospital (BWH). At the time of his death, Mr. Kelly was under the care of an oncologist, Dr. Michael Vasconcelles (Vasconcelles). Plaintiff held a health care proxy for her husband that required her to make his medical decisions. As of August 9, 1994, Vasconcelles determined that Mr. Kelly did not have long to live. On that date Vasconcelles discussed with plaintiff the possibility of performing a post-mortem examination of Mr. Kelly so that the specific cause of his death might be ascertained. Vasconcelles also suggested that it might be helpful to the family’s grieving process to have a greater understanding about the circumstances of Mr. Kelly’s death, that the information might, in the future, help BWH to better treat people suffering from the disease, and that Mr. Kelly himself likely would have wanted the information. As Mr. Kelly’s health care proxy, plaintiff was required to give her consent before such an examination could be performed.
Plaintiffs initial response was to reject the request for permission to perform the autopsy. Plaintiff was disinclined to consent because she felt that her husband had been through quite enough procedures. After receiving that response, Vasconcelles nevertheless proceeded to explain to Mrs. Kelly the exact nature of the autopsy procedure to ensure that she was making an informed decision. The doctor explained that an autopsy could be either a general one, in which the whole body was examined, or a limited one, focused on a specific area. The doctor suggested that, in Mr. Kelly’s case, a limited autopsy probably would be effective because he believed that only two organs were involved in Mr. Kelly’s deterioration, his lungs and liver (he was suffering from pneumonia and progressively worsening liver function). Vasconcelles then suggested limiting the autopsy to biopsies of those organs.
Vasconcelles explained how biopsies of these organs might be obtained. Plaintiff inquired whether the biopsy could be obtained by using a needle rather than by making an incision. The doctor stated that in order to obtain adequate organ samples, an incision would likely have to be made. Vasconcelles did inform plaintiff that he was not a trained pathologist and that there might be a way to obtain sufficient samples without such an incision, but that he was unaware of such a procedure. Mrs. Kelly reiterated her concern about the intrusiveness of any autopsy procedure. Vasconcelles indicated to Mrs. Kelly, by gesturing with his hands, that the incision would probably be around four inches in length.
*51 After this discussion, Mrs. Kelly reconsidered her decision to withhold consent for the post-mortem examination. She limited her consent to a biopsy of the liver and lungs. On the consent form Dr. Vasconcelles included the following restriction: “biopsy of the liver and lung only. May make incision to obtain biopsy specimens if necessary!.]” (Emphasis in the original.)
Mr. Kelly died two days later, on August 11, 1994. On the morning of August 12, 1994, the autopsy was performed. Present at the autopsy were Drs. Susan O. Vargas and Madeleine Kraus. Dr. Kraus actually performed the autopsy and made the incision, while Dr. Vargas observed the procedure and signed the autopsy report as prosector. One incision was made to obtain tissue samples from both Mr. Kelly’s lung and liver.[2] The pathologist(s) also obtained a “pleural effusion, cell block” and a “bone marrow smear.”
Thereafter, on the morning of August 12, 1994, plaintiff discovered that her husband’s body had not yet been delivered to the funeral home. The funeral director, Lawrence J. Keaney (Keaney), asked Mrs. Kelly if BWH was going to be doing an autopsy. Plaintiff responded that it was her understanding that BWH only was going to obtain a biopsy via a small incision. Keaney contacted BWH and later that day, Mr. Kelly’s body was delivered to the funeral home where Keaney performed the embalming. During the embalming Keaney noticed that the size of the incision was larger than plaintiff had reported and when he later spoke with her by telephone, Keaney mentioned that fact. Plaintiff became very distressed at Keaney’s description of the incision and directed him to take four photographs of it. Mrs. Kelly never viewed the incision in person. A wake was held and Mr. Kelly’s body was subsequently cremated.
Thereafter, plaintiff filed this complaint alleging tortious interference with a dead body, negligent and intentional infliction of emotional distress, and intentional misrepresentation.
III. Discussion
This court will grant summary judgment where there exists no genuine issue of material fact and where the moving parly is entitled to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). A moving parly who does not bear the burden of proof at trial may also prevail on a motion for summary judgment by demonstrating that the discovery record shows that the non-moving party will be unable to prove an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party has made such a demonstration, the non-moving party must respond by providing the court with admissible evidence showing the existence of facts supporting every element of its claim. Pederson v. Time Inc., 404 Mass. 14, 16-17 (1989). Thus, in such a case, the nonmoving party may not defeat summary judgment merely by resting on its pleadings or asserting that there remain facts in dispute. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Where there are allegations that a medical doctor has acted outside the accepted standard of care, and where the standard of care is beyond the scope of the average juror’s experience, plaintiff must provide some expert evidence. Forlano v. Hughes, 393 Mass. 502, 507 (1984) (only in exceptional circumstances may a jury, without the aid of expert medical opinion, determine whether a physician has comported with the standard of care accepted in the medical community).
a. Tortious Interference With a Dead Body
The next of kin of a deceased person has a right to possession and burial of the deceased’s body. Burney v. Children’s Hospital, 169 Mass. 57, 60-61 (1897). Depending on the facts, that person also may state a civil claim against persons who mutilate the body of the deceased, id., including claims against individuals who exceed the scope of permission granted to perform an autopsy. See Oliver v. Worcester Health and Hospitals Authority, 1993 WL 818604, *1 (Mass. Superior Court, Fremont-Smith, J., Sept. 24, 1993). To recover for mental distress caused by mishandling human remains that is not accompanied by physical harm, however, a plaintiff must show that the defendant’s conduct was intentional or reckless. Sackett v. St. Mary’s Church Society, 18 Mass.App.Ct. 186, 188 (1984). In other words, the claim is not one based upon strict liability; plaintiff must do more than show that she expected the incision to be four inches long and that instead it was longer. There is no evidence beyond these facts, and therefore, no reasonable jury could conclude that the defendants either intentionally or recklessly mishandled Mr. Kelly’s body.
The record shows that Vasconcelles was frank and thorough in his discussion with plaintiff about the proposed autopsy, that he disavowed the specialized knowledge of a pathologist, and that he limited the autopsy to the specific organs in question. Plaintiff has provided no facts to establish the contrary. Instead, plaintiff asserts that Vasconcelles acted recklessly when he indicated to her that the biopsy incision would only be four inches long, but neither specifically noted this length on the consent form nor contacted the pathology department to convey to them that specific limitation. This court does not agree. Although it may be true that Vasconcelles should have either made such a note on the permission form or followed up with the pathologists, that fact is not self-proving. Plaintiff has not even made a showing that Vasconcelles’ conduct went beyond the acceptable standard of care in the medical community, never mind that it was so far out of the norm as to amount to reckless or unlawful intentional conduct. Plaintiff has provided no expert testimony showing that Vasconcelles’ discussion with her diverged from the standards of care typically employed in such a sensi *52 tive situation, nor that he should have noted the limitation differently.
In addition, it is undisputed that the extent of Drs. Kraus, Lilly and Vargas’ knowledge of the limitation on the autopsy was the notation on the permission form. Plaintiff has failed to provide the court with expert evidence showing that Drs. Kraus and/or Vargas should have acted differently than they did based on the noted limit. Without such evidence, no fact-finder could conclude either that the defendants acted recklessly in handling Mr. Kelly’s body or that they intentionally mishandled it. Forlano v. Hughes, 393 Mass. 503, 507 (1984). See also Ward v. Levy, 27 Mass.App.Ct. 1101, 1102 (1989).
b.Intentional Infliction of Emotional Distress
Absent proof of accompanying physical harm, plaintiff may only prevail on a claim for intentional infliction of emotional distress by showing that the defendants’ intended to inflict emotional distress, or should have known that their conduct would result in such distress; that the conduct was “extreme and outrageous, . . . beyond all possible bounds of decency” so as to be “utterly intolerable in a civilized community" and the cause of plaintiffs distress, and that the distress was so severe and of a kind so that “no reasonable man could be expected to endure it.” Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976). Although plaintiff may be able to prove some elements of her claim, this court concludes that she has failed, as a matter of law, to show that the defendants’ actions were so “extreme and outrageous” as to permit a jury to impose liability.
As discussed above, plaintiff has not provided evidence that the defendants intentionally or recklessly exceeded the scope of plaintiffs autopsy consent. Neither, has plaintiff shown that defendants deliberately disfigured the body, retained parts of the body for any longer than necessary or otherwise interfered with the decedent’s wake, cremation or interment. See e.g. Palmquist v. Standard Acc. Ins. Co., 3 F.Supp. 358 (SD Cal. 1933) (refusal to return internal organs after autopsy); Allen v. Jones, 104 Cal.App.3d 207 (1980) (cremated remains of deceased lost in transit); Courtney v. St. Joseph Hosp., 500 N.E.2d 703 (Ill. 1986) (refrigerator malfunction resulted in decomposition of body); Carney v. Knollwood Cemetery Assn., 514 N.E.2d 430 (Ohio 1986) (coffin and body disintered and thrown on dirt pile).
The only evidence before the court is that plaintiff was told and was expecting that the incision made to obtain samples of Mr. Kelly’s lung and liver would be a maximum of four inches, and that in reality the incision was longer. These facts are simply insufficient to amount to extreme and outrageous conduct. Plaintiff explicitly consented to an autopsy of her husband’s organs. Plaintiff signed a permission form which allowed for an incision without regard to its length. That Vasconcelles failed either to note a length limitation or to confer with the pathologists after his thorough discussion with plaintiff is insufficient proof for the plaintiff to prevail on her claim. That plaintiff may have relied upon Vasconcelles as a person in whom she put her trust does not change the analysis. In either case, plaintiff failed to provide expert testimony showing that somehow the defendants’ conduct in obtaining plaintiffs consent autopsy, a clearly sensitive situation, was so far outside the norm as to be “utterly intolerable in a civilized society.”
Plaintiffs proof also fails as to Drs. Kraus and Vargas. Plaintiff has provided no evidence from which a reasonable jury could conclude that the autopsy was performed in a way that the doctors should have known would cause plaintiff extreme emotional distress. Plaintiff has provided no evidence to show that any of the doctors should have acted differently based upon the noted limit on the autopsy. Without evidence of this kind, plaintiff cannot prevail.
c.Negligent Infliction of Emotional Distress
This court concludes that plaintiff has failed also in the proof of her claims against the defendants for negligent infliction of emotional distress. For plaintiff to succeed on these claims she must prove that the defendants’ conduct was negligent and that as a result she suffered both emotional distress that a reasonable person would have suffered under the circumstances and physical harm manifested by objective symptomology. Payton v. Abbot Labs, 386 Mass. 540, 557 (1982). In part 111(b) of this memorandum, the court has concluded that plaintiffs evidence cannot support a finding of reckless or intentional behavior. The court concludes the same on plaintiffs negligence claim. There is no evidence that defendants failed to meet the requisite standard of care in procuring or performing the autopsy; there is no negligence.
As with her other claims, plaintiff produced no expert evidence regarding the appropriate standard of care for procuring or performing an autopsy. It may be that no qualified oncologist would have assured plaintiff that the incision could be limited to four inches and that no qualified pathologist would have read the permission form to allow a large incision. Plaintiff, however, has not provided the court with such proof. There is no basis, therefore, for a juiy to assign liability to the defendants.
d.Misrepresentation
Plaintiff has brought a claim against defendant Vasconcelles for misrepresentation. To prove a claim of misrepresentation, plaintiff must show that the defendant made a false representation of material fact, knowing that the statement was either false, or was made with reckless disregard for the truth, that the statement was made for the purpose of inducing the plaintiff to act, that the plaintiff relied upon the misrepresentation and indeed, took action to her detriment. Barret Assoc. v. Aronson, 346 Mass. 150, 152 *53 (1963); Ravosa v. Zais, 40 Mass.App.Ct. 47, 52 (1986), rev. denied 422 Mass. 1108.
The statement of which plaintiff complains is Vasconcelles’ alleged indication to her that the incision would only be four inches in length. Even assuming that Vasconcelles did indicate that the biopsy incision would probably only be four inches in length, the fact that it ultimately ended up being longer is insufficient to infer that he made the statement with reckless disregard for the truth. Vasconcelles states in his deposition that “for the pathologist(s) to adequately sample the organs, they really needed to visualize them and that there was no way around that except through an incision.” Plaintiff claims that from this statement alone, it is self evident that Vasconcelles acted with reckless disregard for the truth, for how could both the lung and the liver be visualized via only a four inch incision. Taken in context, however, Vasconcelles continues in his deposition, and adds that because the liver and lung are on the same side of the body and that the liver is directly below the lung, it was his understanding that the incision could be small if made in an appropriate location. In addition, Vasconcelles informed plaintiff that he was not a trained pathologist. The court therefore, concludes that no reasonable juiy could infer, based only on the deposition statement, that when Vasconcelles indicated the approximate length of the incision he was acting in reckless disregard for the truth.
IV. Conclusion
The court-does not minimize or question the depth of emotion that this situation may have stirred in the plaintiff. Nevertheless, although it may be true that, as plaintiff says, “(i]t is a matter of common knowledge in civilized society that close relatives and friends possess deep-seated feelings and emotions regarding the remains of their dead[ and that t]he person or persons with the duty of burying the loved one have the right to see that the body is preserved and their feelings in relation thereto protected!,]” (Plaintiffs memorandum at 15, quoting Rollins v. Phillips, 554 So.2d 1006 (Ala. 1989)), this does not mean that any act that goes beyond the scope of an autopsy consent is actionable. In addition to considering the need to preserve the feelings of the decedent’s family and friends, the court must evaluate the conduct of the defendants in relation to the typical standard of care and to ascertain their culpability. No matter how sincere and distressing to plaintiff the situation may be, the claims alleged are not strict liability offenses where the plaintiff only need show that her consent was exceed and that she indeed suffered. Plaintiff has failed to meet her burden on one essential element of every claim, and therefore, the defendants are entitled to summary judgment.
ORDER
For the foregoing reasons, defendants’ Motion for Summary Judgment is ALLOWED.

The parties dispute just how big the incision was. Defendants contend that it was approximately ten inches, while the plaintiff asserts that it was longer, running from the base of the sternum down to the waist, and around to the back to within two inches from the spine.