IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 12, 2008  Session

## ANGIE L. GLEAVES v. GARY W. GLEAVES

**Appeal from the Chancery Court for Wilson County**
**No. 06132      C. K. Smith, Chancellor**

---

**No. M2007–01820-COA-R3-CV - Filed November 13, 2008**

---

In this divorce action, Wife contends that the trial court erred in ordering the marital home sold; finding Husband's down payment on the marital home to be separate property; failing to award her alimony; and failing to award her counsel fees.  We affirm in part and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Paula Ogle Blair, Nashville, Tennessee, for the appellant, Angie L. Gleaves.

Robert Todd Jackson, Brentwood, Tennessee, for the appellee, Gary W. Gleaves.

### OPINION

Gary W. Gleaves ("Husband") and Angie L. Gleaves ("Wife") were married on November 26, 1994.  At the time the parties filed for divorce they had three minor children, one born in 1990 to Wife and later adopted by Husband, and two born to Husband and Wife during the marriage.  For three years prior to the marriage and for the first six years of the marriage the parties lived in a home which had been purchased by Husband prior to the marriage.  In 2001, they sold the home and purchased another residence in Mt. Juliet, Tennessee ("the property" or "marital residence").  The parties used $88,000 from the sale of the first home plus approximately $12,000 from a marital savings account as the down payment on the marital residence; a mortgage was taken out by both parties to cover the remainder of the purchase price.  The property was titled in the names of both Husband and Wife.

Husband has a high school education, some college education and over thirty years vocational experience as a plumber.  Throughout the marriage Husband worked for his family's plumbing company, in which he also owns a 10 percent interest; Husband does mostly plumbing installation

for new developments. Wife has a high school education and has worked part-time through most of the marriage as a public school teaching assistant, though she also has some experience as a home caregiver from before the marriage; she was also the primary caretaker of the parties' three children throughout the marriage.

The marriage became strained within the first few years, but began to seriously deteriorate in 2004. In March 2006, Wife filed for divorce alleging irreconcilable differences, inappropriate marital conduct, and cruel and inhuman treatment. Husband filed an answer and counter-complaint alleging irreconcilable differences, inappropriate marital conduct, and adultery. Both Husband and Wife sought equitable division of the marital estate, attorney's fees, to be named the primary residential parent of their minor children and child support. Wife also sought alimony.

At the conclusion of the trial on January 23, 2007, the court found both parties guilty of inappropriate marital conduct and declared the parties divorced pursuant to Tenn. Code Ann. § 36-4-129(b). The court named Wife the primary residential parent and awarded child support of $414.46 per week. Wife was awarded marital property valued at $4,460 and Husband was awarded marital property valued at $12,367; to make up for the disparity in the value of personal property divided, the court award Wife $3,953 in cash. Wife was also awarded $26,455.40 representing the present value of one-half of the non-liquid marital assets, which were Husband's retirement account, Husband's 10% interest in his family's company, and a savings account in the name of Husband and Cindy Ham, Husband's sister.[1] The court declined to award Wife alimony.

With respect to the marital residence, the court found that the $88,000 which was received as proceeds from sale of the home owned by Husband prior to the marriage and applied to the down payment on the marital residence was not transmuted; the court declared that the $88,000 to be the separate property of Husband. The court did not award the residence to either party but, upon Wife's testimony that she wanted to remain in the home and was seeking financing to purchase Husband's equity, stated that it would allow the parties an opportunity to prevent the sale of the property, but would order the property sold if they could not agree. On March 7, 2007, an order was entered by the trial court memorializing its ruling from the bench and ordering the marital home sold by the Wilson County Clerk and Master's Office. The court also ordered that $88,000 be deducted from the proceeds of sale, given to Husband, and the remaining equity in the home divided equally between Husband and Wife.

Wife filed a Notice of Appeal on March 30, 2007. On May 24, Husband filed a Motion to Enforce Final Decree and Proceed with the Sale of the Marital Home. On August 11, the court entered Agreed Order to Sale [sic] Marital Home and the residence was sold at auction on September 29, 2007; the net proceeds, with the exception of $88,000, were ordered distributed to the parties by Agreed Order on October 10. The $88,000 was to be held by the Wilson County Clerk and Master's Office, however, on October 12, another Agreed Order was entered by the court disbursing the

---

[1] The court ordered that the $30,408.40 ($26,455.40 illiquid assets plus $3,953.00 cash award) be paid to Wife out of Husband's one-half equity in the marital home.

$88,000.[2]  On October 31, 2007, the trial court granted in part and denied in part Wife's Motion to Alter or Amend, which she had filed on March 22, 2007.  The trial court adjusted the final decree and the parenting plan to reflect Wife's true 2006 income as $16,949.41, but denied Wife's request that the trial court alter or amend its findings regarding $88,000 of the down payment on the marital residence, the division of personal property, and the sale of the marital residence.

On appeal, Wife argues that the trial court erred in:  (1) ordering the marital home sold at auction; (2) finding Husband's down payment on the marital home separate property; (3) failing to award Wife alimony; and (4) failing to award Wife's attorney's fees.

## ANALYSIS

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless there is evidence which preponderates to the contrary.  Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).  The evidence preponderates against the trial court's finding of fact if it supports another finding of fact with greater convincing effect.  *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)).  The trial court's conclusions of law are accorded no presumption of correctness.  *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

## I. Auction of Marital Home

Wife contends that the trial court erred in ordering the marital property sold at auction after initially telling the parties they could work out the details of how the equity in the home would be paid.  Wife states that, as the primary residential parent, she wanted the children to be able to stay in the home, and, therefore, to prevent its sale she planned to obtain a loan in order to pay husband his one-half equity interest in the house.  However, before she could finalize arrangements, the court ordered the home sold at auction.  Wife appealed the court's order, but subsequently agreed to the

---

[2] The record is somewhat confusing as to the precise dates of and events surrounding each of the several Agreed Orders entered by the trial court during the month of October.  There was an Agreed Order entered on October 5 ordering "the proceeds from the auction of the marital home be disbursed immediately" to the parties.  There was then an Agreed Order Confirming Sale of Real Property entered on October 10 detailing the various auction expenses and ordering the net proceeds from the sale be distributed to the parties, except for $88,000.00, which was to be held by the Wilson County Clerk and Master "pending further orders from the Court of Appeals."  That October 10 Order was stamped "entered" on October 10, but stamped "lodged" on October 15, and signed by the judge on October 23.  There was another Agreed Order entered on October 10 ordering "the proceeds from the auction of the marital home, with the exception of $88,000.00, be disbursed immediately."  On October 12, there was another Agreed Order entered ordering that "the Court's previous order requiring the $88,000.00 to be held by the Wilson County Clerk and Master be set aside" and that $30,408.00 be disbursed to Angie Gleaves to satisfy the judgment against Gary Gleaves in that amount, as well as $16,113.87 representing her remaining equity in the marital home; it also ordered $87,014.88 be disbursed to Gary Gleaves representing his remaining equity in the marital home.

sale because she was having financial difficulty. Husband argues that this issue is moot because the marital home was sold pursuant to an agreed order and the proceeds disbursed.

"Review proceedings are not allowed for the purpose of setting abstract questions, but only to correct errors injuriously affecting the rights of some party to the litigation, and, accordingly, an appeal or error proceeding will be dismissed if the question presented by it has become moot or academic or if an event has occurred which makes a determination of it unnecessary or renders it impossible for an appellate court to grant effectual relief." *In re Sentinel Trust Co.*, 206 S.W.3d 501, 531 (Tenn. Ct. App. 2005) (citing *Boyce v. Williams*, 389 S.W.2d 272, 278 (Tenn. 1965); *McCanless v. Klein*, 188 S.W.2d 745, 747 (Tenn. 1945). In the present case, the property has already been sold and the proceeds distributed; consequently, it is unnecessary for us to decide this issue, since our ability to fashion appropriate relief in the event we found the court in error would be limited. However, we can, and will, consider the fact and circumstances of the sale in addressing other issues in this appeal.

## II. Classification and Division of Property

In a divorce proceeding, questions concerning the classification of property as either marital or separate, "as opposed to questions involving the appropriateness of the division of the marital estate, are inherently factual," *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007), and therefore, a trial court's decision in that regard will not be disturbed unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Woodward v. Woodward*, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007). Wife argues that the trial court erred in classifying $88,000 of the down payment on the marital home as separate property.

Tennessee is a "dual property" jurisdiction because its divorce statutes draw a distinction between marital and separate property, requiring that marital property be equitably divided; consequently, proper classification of a couple's property is essential. Tenn. Code Ann. § 36-4-121(a) (2008); *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). Division of the estate begins with the identification of all property interests followed by classification of property as either marital or separate. *Keyt v. Keyt*, 244 S.W.3d 321, 328 (Tenn. 2007). Property cannot be included in the marital estate unless it fits within the statutory definition of "marital property," and by the same token, "separate property," as defined by statute, should not be included in the marital estate for division. Tenn. Code Ann. §§ 36-4-121(b)(1) and (2); *Daniel v. Daniel*, M2006-01579-COA-R3-CV, 2007 WL 3202778 at *4 (Tenn. Ct. App. Oct. 31, 2007).

"Marital property" includes the following:

(1)(A) [A]ll real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce....

-4-

(B) [I]ncome from any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation....

Tenn. Code. Ann. § 36-4-121(b)(1)(A), (B) (2008).

"Separate property," on the other hand, is defined as follows:

(A)  All real and personal property owned by a spouse before marriage ...;

(B)  Property acquired in exchange for property acquired before the marriage;

(C)  Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

(D)  Property acquired by a spouse at any time by gift, bequest, devise or descent....

Tenn. Code. Ann. § 36-4-121(b)(2)(2008).

According to the statute, assets acquired by the parties during the marriage are presumed to be marital property, *see* Tenn. Code Ann. § 36-4-121(b)(1)(A), but that presumption may be rebutted by a preponderance of proof that an asset is actually the separate property of either spouse. *Woodward*, 240 S.W.3d at 828; *Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998). The Tennessee Supreme Court has recognized that property acquired during the marriage that is traceable to separate property will be considered separate property unless it has been gifted to the marital estate or has been inextricably commingled with marital assets. *Keyt v. Keyt*, 244 S.W.3d 321, 328 n.7 (Tenn. 2007). The party seeking to have such separate property included in the marital estate bears the burden of proving that it fits within the statutory definition of marital property. *Id.*

In the present case, the trial court found that, because $88,000 of the down payment on the marital home was "traceable" to the proceeds from the sale of property owned by Husband prior to the marriage, it was separate property. Wife does not dispute that part of the down payment came from the sale of property Husband owned prior to the marriage, but argues that Husband gifted the $88,000 to the marital estate when he combined it with marital savings account funds to make the down payment on the marital home.

The courts of Tennessee have recognized two possible methods whereby property that is separately owned can be converted into marital property for the purpose of equitable division in divorce cases – commingling and transmutation. Commingling occurs when separate property becomes inextricably mixed or mingled with marital property or with the separate property of the

other spouse.[3] *Smith v. Smith*, 93 S.W.3d 871, 878 (Tenn. Ct. App. 2002). Transmutation takes place when the parties treat separate property in such a way as to reflect an intention that it become marital property. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002); *Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988). The doctrine is based on the rationale "that dealing with property in these ways creates a rebuttable presumption that the property was gifted to the marital estate." *Langschmidt*, 81 S.W.3d at 747; *Eldridge v. Eldridge*, 137 S.W.3d 1, 13 (Tenn. Ct. App. 2002). Simply placing the title to a piece of separate property in the names of both parties creates a rebuttable presumption of a gift to the marital estate. *Langschmidt*, 81 S.W.3d at 747; *Wright-Miller v. Miller*, 984 S.W.2d 936, 941 (Tenn. Ct. App. 1998). However, separate property can become marital property even without a change in the title. As this court said in *Mondelli v. Howard*, 780 S.W.2d 759, 774 (Tenn. Ct. App. 1989), "[i]n the final analysis, the status of property depends not on the state of its record title, but on the conduct of the parties."

The four most common factors, or conduct of the parties, courts look for in determining whether property has been transmuted are:

(1) the use of the property as a marital residence;

(2) the ongoing maintenance and management of the property by both parties;

(3) placing the title to the property in joint ownership; and

(4) using the credit of the non-owner spouse to improve the property.

*Daniel v. Daniel*, No. M2006-01579-COA-R3-CV, 2007 WL 3202778 (Tenn. Ct. App. Oct. 31, 2007); *See Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407 at *5 (Tenn. Ct. App. Sept. 1, 2006) (citing 3 John Tingely & Nicholas B. Svalina, Marital Property Law, § 43:11, at 43-119 to -122 (rev.2d ed. 2006)); *See also Woodridge v. Woodridge*, 240 S.W.3d 825 (Tenn. Ct. App. 2007) (finding two properties owned by husband before the parties married were transmuted into marital property where husband titled both properties jointly with wife); *Barnhill v. Barnhill*, 826 S.W.2d 443, 452 (Tenn. Ct. App. 1991) (finding 18 acre tract of land that husband inherited and registered in the names of both Husband and Wife was marital property because husband failed to show he intended it to be separate); *Lamb v. Lamb*, M2004-01768-COA-R3-CV, 2006 WL 482917 at *3 (Tenn. Ct. App. Feb. 28, 2006) (finding the wife's life estate in farmland she inherited and on which the husband operated a farming business was separate property because the husband continued to pay rent to use the farmland and the property taxes were paid by Wife's separate account); *Avery v. Avery*, M2000-00889-COA-R3-CV, 2001 WL 775604, (Tenn. Ct. App. Jul. 11, 2001) (finding husband's separate investment account remained separate despite husband using some of the funds as marital income because evidence showed husband took great care to keep the Fund separate and specifically refused the wife's requests that the entirety of the Fund be placed in a joint account).

---

[3] Wife does not contend that commingling occurred.

In factually similar cases, courts have found transmutation occurred when a spouse used separate property as the down payment for the marital home and offered no other evidence to rebut the presumption that the down payment was a gift to the marital estate. In *Eldridge v. Eldridge*, 137 S.W.3d 1 (Tenn. Ct. App. 2002), the court found that the husband failed to rebut the presumption that the $1.2 million down payment he made to purchase the couple's jointly titled marital home was separate property. Specifically, the court found that it was the husband's intent "to use the home as the couple's residence when he made the down payment" even though the couple never actually moved into the house and "Husband was aware that he and Wife were having marital difficulties when he purchased the home." *Id.* In *Miller v. Miller*, W2003-00851-COA-R3-CV, 2004 WL 1334516 (Tenn. Ct. App. Jun. 14, 2004), the court found the $53,000 down payment for the marital home, which was derived from the sale of husband's separately owned home, was transmuted into the marital estate despite the short duration of the marriage (less than two years) because Husband used the separate funds to purchase jointly titled property and Husband offered no "evidence of circumstances or communications clearly indicating an intent that the property remain separate." *Miller*, 2004 WL 1334516 at *3-4 (citing *Batson*, 769 S.W.2d at 858).

We find that Wife offered sufficient evidence to show that the $88,000 applied to the down payment became marital property through transmutation and that Husband failed to show a contrary intent. It is undisputed that the parties lived in the first home for three years prior to their marriage and for six years after the marriage as their marital residence and that the parties purchased the second home with the intent that the family reside there; they lived in that home for the last six years of the marriage. The $88,000 proceeds from the sale of property Husband owned prior to the marriage was combined with approximately $12,000 from a savings account, which the court found to be marital property, in order to bring the total down payment to approximately $100,000. The property and mortgage were jointly titled and both parties contributed to the expenses and maintenance of the home. Husband testified that the monthly mortgage payments were made from either his savings account (which was marital property) or the parties' joint checking account and offers no evidence of circumstances or communications evidencing an intent that the $88,000 remain separate property. Therefore, we reverse the trial court's classification of the $88,000 as Husband's separate property and find that it was transmuted into marital property. Consistent with the trial court's equal division of the equity in the marital residence, Wife is entitled to a judgment against Husband for $44,000, and that she should receive interest on this amount since October 12, 2007, the date of disbursement of the $88,000.00 to Husband.

## III. Alimony

Wife asked the trial court to award her alimony *in futuro* in the amount of $600.00 per month; or in the alternative, that she be allowed to keep the marital residence, after buying out Husband's equity interest, as alimony *in solido*. The trial court declined to award any alimony. On appeal, Wife asks only for an award of alimony *in futuro*, inasmuch as the marital residence has been sold.

Whether to award alimony is within the sound discretion of the trial court in light of the particular circumstances of each case. *Riggs v. Riggs*, 250 S.W.3d 453, 456-57 (Tenn. Ct. App.

2007)(citing *Lindsey v. Lindsey*, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997)). When determining whether an award of alimony is appropriate, courts must consider the statutory factors in Tenn. Code Ann. § 36-5-121(i). Alimony decisions require a careful consideration of the relevant factors in Tenn. Code Ann. § 36-5-121(i) and typically hinge on the unique facts and circumstances of the case. *Oakes v. Oakes*, 235 S.W.3d 152, 160 (Tenn. Ct. App. 2007); *see also Anderton v. Anderton*, 988 S.W.2d 675, 683 (Tenn. Ct. App. 1998). The relevant factors to be considered under Tenn. Code Ann. § 36-5-121(i) when determining whether to award alimony include:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
> (7) The separate assets of each party, both real and personal, tangible and intangible;
> (8) The provisions made with regard to the marital property;
> (9) The standard of living of the parties established during the marriage;
> (10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by party to the education, training or increased earning power of the other party;
> (11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
> (12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i).

While a trial court should consider all the relevant factors under the circumstance, the two most important factors to be considered are the need of the economically disadvantaged spouse and the obligor spouse's ability to pay. *Riggs*, 250 S.W.3d at 457 (citing *Robertson v. Robertson,* 76 S.W.3d 337, 342 (Tenn. 2002); *Bogan v. Bogan*, 60 S.W. 3d 721, 730 (Tenn. 2001); *Oakes*, 235 S.W.3d at 160. When considering these two factors, the primary consideration is the disadvantaged spouse's need. *Riggs*, 250 S.W.3d at 457 (citing *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995); *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999)). Once the trial court has determined that spousal support is appropriate, it must determine the nature, amount, and period of

time of the award. Under Tennessee law, a "court may award rehabilitative alimony, alimony *in futuro*, also known as periodic alimony, transitional alimony, or alimony *in solido*, also known as lump sum alimony, or a combination of these...." Tenn. Code Ann. § 36-5-121(d)(1).

We review an award of alimony under the abuse of discretion standard. *Herrera v. Herrera*, 944 S.W.2d 379, 388 (Tenn. Ct. App. 1966). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *Clement v. Clement*, W2003-02388-COA-R3-CV, 2004 WL 3396472 (Tenn. Ct. App. Dec. 30, 2004); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

On the issue of alimony the trial court stated:

I don't think that has been shown that, I don't think she's carried the burden of proof there that he should pay any alimony. She's shown that she wants to get a nursing degree or some kind of degree or something. She's working, making money. She's going to get money from this settlement. I just find there's no reason for him to pay alimony. And she's going to be getting a considerable amount of child support.

As the trial court did not make any findings of fact regarding the relevant statutory factors, we must conduct our own independent review of the record to determine where the preponderance of the evidence lies. *Broadbent*, 211 S.W.3d at 221; *See Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000) (independent review required where trial court stated that it considered the entire record prior to its ruling, but did not make findings of fact with regard to the factors considered). We have carefully examined the record in light of the factors set forth in Tenn. Code Ann. § 36-5-121(i) and conclude that the evidence preponderates in favor of an award of transitional alimony.[4]

At the time of trial, Wife earned $16,949.41 per year as a part-time teaching assistant, a position she held during the marriage. Wife testified that she will need to increase her income by either securing better employment or going back to school to enhance her qualifications for future employment. In addition to enhancing her employment, Wife will need to find a new home for herself and the children since the marital residence was sold as result of the divorce. Wife testified that her current employment would not provide enough income to enable her to afford to rent or buy an appropriate home in an area where the children may remain in their same schools. The facts show that Wife has less earning capacity and less ability to accumulate assets and savings than Husband.

---

[4] Husband contends that wife put on "little, if any" proof to the trial court on the statutory factors and that we should not disturb the trial court's decision because the court found Wife was not a credible witness. We give great weight to the trial court's findings involving the credibility of witnesses because the trial court is in a better position to weigh and evaluate the credibility of witnesses. *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). However, the only place the trial court mentioned Wife's credibility was in the discussion of grounds for divorce; Wife's credibility was not mentioned in the decision not to award alimony while the trial court found Husband's credibility suspect with regard to his annual income.

While Wife received some money and personal property from the divorce, she must pay her own debts and attorney's fees out of that amount as well as deal with the economic consequences of the divorce such as losing her home. Significantly, the sale of the marital residence brought much less money to be distributed between the parties than the trial court anticipated when it was determining whether to award alimony to Wife.[5] Wife has shown that she is economically disadvantaged relative to Husband as a result of the divorce and has demonstrated a need for alimony.

Husband testified that he earned approximately $45,000 in 2006; however, the trial court found him to be untruthful about his income. Husband earned approximately $90,000 in salary and bonuses in both 2004 and 2005. The trial court found to be credible Wife's testimony that Husband made threats to her that his parents would help him hide his real income and that he wouldn't have to pay for anything if she left him. Husband's mother testified that Husband's gross income would essentially be the same in 2006 as it was in 2005, and the bonuses he received were at his father's discretion. The trial court also found Husband's explanation that he received less in bonuses for 2006 because several of the subdivisions that he worked on were not completed lacked credibility. The trial court found that Husband "is capable, has the education and training, qualifications, experience as a plumber to make $90,000 a year" whether with his father's company or any other company. In addition to his income, Husband has the ability to accumulate assets through his ownership interest in his family's company, a retirement account and a savings account; therefore, he has the ability to pay alimony.

Having determined need and ability to pay, we then look to the other statutory factors. Although both parties were found to be at fault in the divorce, *see* Tenn. Code Ann. § 36-5-121(i)(11), the proof shows that both made a substantial contribution to the marriage. *See* Tenn. Code Ann. §§ 36-5-121(i)(10). Husband contributed with his earning power, but he also testified that he was involved in the children's education, disciplinary matters and health care. *Id.* Wife was the primary caretaker of the children and her part-time job helped pay for many family expenses including daycare. *Id.*

Wife has a high school education, but no college or vocational training; however, she worked outside the home during the entire twelve years of the marriage earning $16,949.41 in the last year of the marriage as a part-time teaching assistant. *See* Tenn. Code Ann. §§ 36-5-121(i)(1), (2). Husband has some college and nearly thirty years of vocational training as a plumber earning approximately $90,000 per year working for his family's plumbing company. *Id.* Wife's ability to work full time at the employment of her choice may be hindered by her role as primary residential parent of the parties' three minor children. *See* Tenn. Code Ann. §§ 36-5-121(i)(6). Even if Wife is able to earn a full-time salary as a teacher, nurse, or other employment she is unlikely to achieve the middle class status of her prior station, which was funded by two incomes totaling approximately $80,000-$106,000 per year. *See* Tenn. Code Ann. § 36-5-121(i)(9).

---

[5] The trial court found the value of the marital home to be $250,000; however, the home actually sold to Husband's parents for only $187,500 after Husband pushed for the sale, filing a motion to enforce final divorce decree even though Wife had appealed the decree.

Wife's assets after the divorce include $9,775.00 worth of separate personal property, $4,460 worth of marital personal property, and $46,521.87 cash from the sale of the marital residence.[6] *See* Tenn. Code Ann. §§ 36-5-121(i)(7), (8). While Wife will receive an additional $44,000 as a result of our decision here that the $88,000 was marital property, the other factors rendering Wife economically disadvantaged relative to Husband are not outweighed. Wife testified that she has no retirement accounts or non-liquid assets, and owns no income producing assets. *See* Tenn. Code Ann. § 36-5-121(i)(1). Husband's post-divorce assets include $2,980 worth of separate personal property, $12,367.00 worth of marital personal property, $87,014.88 cash from the sale of the marital residence, $10,000 in a retirement account, 10% interest in his family's business, and $27,500 in a savings account. *See* Tenn. Code Ann. §§ 36-5-121(i)(1), (7), and (8).

All of these facts preponderate in favor of finding that Wife is economically disadvantaged compared to Husband, and that an award of alimony is appropriate. Considering the "unique facts and circumstances of the case," *Oakes*, 235 S.W.3d at 160, we have determined that transitional alimony should be awarded Wife. Transitional alimony provides "a sum of money payable by one (1) party to, or on behalf of, the other party for a determinate period of time." Tenn. Code Ann. § 36-5-121(g)(1) (2008). Under the statute, "[t]ransitional alimony is awarded when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce...." Tenn. Code Ann. § 36-5-121(g)(1).

With respect to rehabilitative alimony, although Wife testified that she would like to go back to school, she failed to introduce evidence of the type, cost and duration of any potential schooling or future job training; in addition, she failed to request such an award. Similarly, while Wife asks the Court for an award of alimony *in futuro* of $600 per month, we are not convinced that Wife will be unable, with reasonable effort, to achieve "an earning capacity that will permit [her] standard of living after the divorce to be reasonable comparable" to that enjoyed by the parties while they were married. Tenn. Code Ann. § 36-5-121(f)(1). Wife worked throughout the marriage and is capable of increasing her income by working full time. While her employment choices, and thus, earning potential, may be somewhat limited by her role as the primary residential parent, all of the children are of school age; within a few years the oldest child will have reached majority and the others will be teenagers and less dependent on their mother. The economic consequences of the divorce have left her with few resources with which to start a new life in a new home for herself and the children as their primary residential parent and she will have to increase her income through employment as circumstances allow. Therefore, we find an award of transitional alimony in the amount of $500 per month for 60 months appropriate.

---

[6] $187,500.00 (sale price) - $40,467.25 (expenses) = $147,032.75 (net proceeds) - $88,000.00 (Husband's separate property down payment) = $59,032.75 / 2 = $29,516.37 to each party. Wife's $29,516.37 was reduced by $13,402.50 (attorney lien) leaving her with $16,113.87. Upon disbursement, Wife received $46,521.87 ($16,113.87 (from sale) + $30,408.00 (judgment against Husband from final divorce decree)) and Husband received $87,014.88 ($88,000.00 + $29,516.37 - $30,408).

## IV. Award of Attorney's Fees

An award of attorney's fees in a divorce case constitutes alimony *in solido*. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *Herrera v. Herrera,* 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996); *See also Raskind v. Raskind*, 45 Tenn. App. 583, 601, 325 S.W.2d 617, 625 (1959) and *Humphreys v. Humphreys*, 39 Tenn. App. 99, 125, 281 S.W.2d 270, 282 (1954). When determining whether to award attorney's fees, the trial court must consider the relevant factors regarding alimony set forth in Tenn. Code Ann. § 36-5-121(i). *Eldridge v.* Eldridge, 137 S.W.3d 1, 24 (Tenn. Ct. App. 2002); *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). As with alimony, need is a critical factor to be considered by the court when deciding whether to award attorney's fees. *Eldridge*, 137 S.W.3d at 24-25 (citing *Herrera*, 944 S.W.2d at 390). The question of whether to award attorney's fees, and the amount thereof, are within the sound discretion of the trial court and we will not disturb the trial court's decision on appeal absent an abuse of discretion. *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995); *Anzalone v. Anzalone*, No. E2006-01885-COA-R3-CV, 2007 WL 3171132 at *7 (Tenn. Ct. App. Oct. 30, 2007)(citing *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 751 (Tenn. 2002)).

In its decision, the trial court determined that both Husband and Wife were responsible for the divorce and, therefore, each was required to pay their own attorney fees. Our review of the record does not reveal any abuse of discretion by the trial court in refusing to award Wife her attorney's fees. When the marital home was sold, at least a portion of Wife's attorney's fees totaling $13,402.50 were paid with the proceeds resulting in Wife receiving $60,113.87 from the sale (including the $44,000 awarded herein). Therefore, we conclude that the trial court properly denied Wife's requests for her attorney's fees.

## CONCLUSION

For the foregoing reasons, we hold that the trial court erred in classifying $88,000.00 of equity in the marital residence as Husband's separate property and in failing to award Wife alimony. In accordance with our holdings, Wife is granted judgment against Husband in the sum of $44,000.00, plus interest, from and after October 12, 2007, and is granted transitional alimony in the amount of $500.00 per month for 60 months from and after date of entry of this order. The remainder of the trial court's judgment is affirmed. This case is remanded to the trial court for enforcement of the judgment and for the collection of costs assessed below. Costs of appeal are taxed to Gary W. Gleaves, for which execution may issue if necessary.

_____
RICHARD H. DINKINS, JUDGE